665 F.2d 910
 Michael C. BARTHOLOMEW, Scott M. Baldwin, Earl W. Branch,
Louis Chavarria, Stephen C. Chochrek, Robert W.
Danielson, Dana B. Robinson, Ernest
Leroy Smith, Plaintiffs-Appellees,
v.
Robert J. WATSON*, Administrator, Oregon
Corrections Division; Hoyt C. Cupp, Superintendent, Oregon
State Penitentiary; George E. Sullivan, Superintendent,
Oregon State Correctional Institute; Leola M. Gierloff
**, Superintendent, Oregon Women's Correctional
Center, Defendants-Appellants.
 No. 80-3237.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 7, 1981.
Decided Jan. 11, 1982.
 
 William F. Nessly, Jr., Asst. Atty. Gen., Salem, Or., for defendants-appellants.
 Robert A. Stalker, Jr., Salem, Or. (argued), for plaintiffs-appellees; Roy S. Haber, Salem, Or., on brief.
 Before KENNEDY and ALARCON, Circuit Judges, and COPPLE***, District Judge.
 ALARCON, Circuit Judge:
 
 
 1
 Appellants Robert Watson, Amos Reed, Hoyt C. Cupp, George E. Sullivan, and T. G. Toombs (hereinafter state appellants) have appealed from the order of the district court awarding attorneys' fees to appellees Michael C. Bartholomew, Scott M. Baldwin, Earl W. Branch, Louis Chavarria, Stephen C. Chochrek, Robert W. Danielson, Dana B. Robinson, and Ernest Leroy Smith (hereinafter the inmates) in the entire amount requested, pursuant to the Civil Rights Attorney's Fee Awards Act of 1976. 42 U.S.C. § 1988 (1976).
 
 BACKGROUND FACTS
 
 2
 On June 6, 1973, the inmates filed their complaint for declaratory and injunctive relief in which they alleged that:
 
 
 3
 This is an action seeking to declare unconstitutional and enjoin administrative regulations and practices of the Oregon State Corrections Division which provide for the imposition of substantial punishment and the denial of important inmate rights and privileges without providing inmates charged with administrative misconduct a fair administrative hearing and an opportunity, at such hearing, to adequately defend themselves and introduce evidence of their innocence.
 
 
 4
 On September 18, 1973 state appellants moved for an order staying the proceedings in the district court pending a determination by the Oregon state courts as to whether the challenged procedures, rules, and regulations complied with Oregon legislation governing disciplinary proceedings within the Oregon Corrections Division which was enacted after this action was filed. The parties settled the stay motion by stipulating in writing that a representative case would be brought in the state court to obtain a ruling on the new statute. The inmates expressly reserved their right to proceed to trial in the district court in this matter. It was further agreed that the ruling requested from the Oregon Courts would not be res judicata in this action. The Oregon state courts ruled in favor of the state. Bonney v. Oregon State Penitentiary, Corrections Division, 16 Or.App. 509, 519 P.2d 383, aff'd, 270 Or. 79, 526 P.2d 1020 (1974).
 
 
 5
 On January 15, 1976, state appellants adopted a rule governing the procedure to be followed in the transfer of potentially disruptive inmates to segregation for administrative purposes. In a document entitled Supplemental Memorandum, filed May 26, 1976, the inmates challenged the constitutionality of these administrative segregation procedures. State appellants filed a motion for summary judgment on July 25, 1974.
 
 
 6
 The district court issued its opinion on April 19, 1979. Bartholomew v. Reed, 477 F.Supp. 223 (D.Or.1979). After the entry of final judgment on September 19, 1979, the attorneys for the inmates petitioned the district court for an award of attorneys' fees in the amount of $11,548.23. State appellants conceded that the inmates were entitled to attorneys' fees because they had obtained some of the relief they sought in bringing the action. The district court was requested to deny any fees for services rendered in connection with the state court proceedings and to base the amount of the award for the services performed on the issues on which the inmates prevailed.
 
 DISCUSSION
 I.
 
 7
 State appellants contend that the district court abused its discretion in awarding attorneys' fees to the inmates for services performed in the Oregon state court proceedings. We are told that (1) the resort to the state court under Pullman abstention principles, Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), was not an action to enforce a provision of 42 U.S.C. § 1983; (2) the action of the Oregon courts was final prior to the effective date of the act authorizing attorney's fees; and (3) the inmates did not prevail in the state courts.
 
 
 8
 The Civil Rights Attorney's Fee Awards Act of 1976 provides in pertinent part: "In any action or proceeding to enforce a provision of (42 U.S.C. § 1983), the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (1976).
 
 
 9
 Our first task in responding to state appellants' argument is to determine whether the district court had the authority under section 1988 to award any fees for services performed in the state courts. The statute makes no reference to reimbursement for proceedings initiated in the state courts under the Pullman abstention doctrine, after the filing of an action to enforce a provision of section 1983. The precise issue presented in this case appears to be a matter of first impression.[1] It is clear from the facts of this case that the state court action was initiated at the insistence of state appellants after the filing of the inmates complaint in the district court. State appellants appropriately invoked the Pullman principle to avoid forcing the federal courts to render an advisory opinion as to the validity of a state's administrative rules under an applicable state law. As pointed out by the district court, abstention under these circumstances promoted comity between the federal and state court systems and furthered the principles of federalism. If we were to adopt state appellants' sophistic claim that 42 U.S.C. § 1988 is inapplicable because the proceedings in the state court were not brought to enforce rights guaranteed by section 1983, justice would truly be blinded from an appreciation of reality. What were the facts known to the district court judge at the time he awarded attorney's fees in this matter?
 
 
 10
 The state court action was initiated and pursued solely because of the filing of the section 1983 civil rights claim in the federal court. The state issues were substantially the same as those raised in the federal claim. The parties stipulated to the suspension of the federal action and to the testing in Oregon's courts of pertinent state statutes which might have been dispositive of the section 1983 claim. If Oregon law had been able to provide plaintiffs the relief they sought, the district court would have avoided the need to adjudicate federal constitutional claims. The inmates who were plaintiffs in the Oregon action were simply required to use a state forum to seek a possible state law basis for vindicating what were essentially the same rights that were the subject of the federal claim under section 1983. The initial determination of potentially conclusive state law issues was an integral part of the section 1983 claim and as such was a necessary preliminary to the enforcement of a provision of 42 U.S.C. § 1983.
 
 
 11
 The Supreme Court's analysis of the scope of an attorney's fees statute similar to 42 U.S.C. § 1988 is instructive. Section 706(k) of the Civil Rights Act of 1964 was interpreted in New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). Section 706(k) provides: "In any action or proceeding under this subchapter, the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs...." 42 U.S.C. § 2000e-5(k) (1976). Countering a contention that only federal and not state "proceedings" were included within the protection of section 706(k), the Court stressed the purpose of section 706(k), the humanitarian and remedial policies of Title VII, and the statute's structure of cooperation between state and federal enforcement authorities. 447 U.S. at 61, 100 S.Ct. at 2029, 64 L.Ed.2d at 733. The Supreme Court stated that failure to award fees for mandatory state proceedings would inhibit the enforcement of a meritorious discrimination claim. Id. 447 U.S. at 63, 100 S.Ct. at 2030, 64 L.Ed.2d at 734.
 
 
 12
 The same factors which support an award of fees for related state proceedings under section 706(k) militates for an award for closely related state court actions under section 1988: 42 U.S.C. § 1983 has the same broad humanitarian and remedial aspect as 42 U.S.C. § 2000e et seq., and the purpose of the fee award in both civil rights actions is to aid in the enforcement of those rights. The Senate Report on section 1983 admonishes the courts to "use the broadest and most effective remedies available to achieve the goals of our civil rights laws." S.Rep. No. 94-1011, 94th Cong., 2d Sess. 3, reprinted in (1976) U.S.Code Cong. & Ad.News 5908, 5910-11. It further declares that a prevailing party " 'should ordinarily recover an attorney's fees unless special circumstances would render such an award unjust.' " Id. at 5912 (quoting Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)). This circuit has stated: "Congress' purpose in authorizing fee awards was to encourage compliance with and enforcement of the civil rights laws. The Fees Awards Act must be liberally construed to achieve these ends." Dennis v. Chang, 611 F.2d 1302, 1306 (9th Cir. 1980).
 
 
 13
 The federal preference for deferring to state interpretation of state law will further cooperation between state and federal courts in the protection of federal constitutional rights. If we were to hold that legal work done in a state court to vindicate rights recognized under section 1983 could not be compensated, serious strains between the state and federal court systems might develop. State defendants would be required to seek abstention until involved state law was adjudicated in state courts. Plaintiffs seeking relief under section 1983 would be compelled to oppose any move from federal court, despite the fact that an initial determination of certain matters by the state court might simplify or even moot the federal action because of the loss of the right to claim attorney's fees under section 1988. A plaintiff's attorney would be penalized if some of his client's section 1983 claims were disposed of in a state forum. The ability to obtain counsel would therefore suffer. This double standard of awarding attorneys' fees would encourage forum shopping and interfere with efficient allocation of issues and cases between the state and federal systems.
 
 
 14
 Having determined that the state court proceedings were an essential step in the presentation of the inmates' section 1983 claim because of the Pullman abstention rule, we can summarily reject state appellants' argument that attorney's fees cannot be awarded because the Oregon court proceedings were final before the enactment of section 1988. In Hutto v. Finney, 437 U.S. 678, 694 n.23, 98 S.Ct. 2565, 2575, 57 L.Ed.2d 522 (1978), the Supreme Court held that section 1988 may be applied retroactively to pending cases for services rendered before the effective date of that statute.
 
 
 15
 For the foregoing reasons, we hold that the district court did not abuse its discretion in awarding fees for services performed in the Oregon court.
 
 II.
 
 16
 State appellants also seek reversal of the award of attorney's fees on the ground that the district court awarded the full amount claimed by the attorneys for the inmates although they did not prevail on all issues.[2]
 
 
 17
 Section 1988 does not place any limitations on the award of "reasonable" attorney's fees to a "prevailing party".
 
 
 18
 In this circuit, we have held that for purposes of entitlement to attorney's fees, a person is a "prevailing party" in a section 1983 claim if he succeeds " 'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit' ". Sethy v. Alameda County Water District, 602 F.2d 894, 897-98 (9th Cir. 1979), cert. denied, 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978). The plaintiff in Sethy had filed claims under 42 U.S.C. §§ 1981 and 1983 against individual defendants and the Water District. The jury returned a verdict in favor of the individual defendants on all claims and against the Water District on the section 1983 claim. The trial court denied plaintiff's request for attorney's fees. One of the reasons set forth by the district court in justification of its denial of attorney's fees is the fact that "Sethy was only partially successful on the merits (i. e., the jury found the Water District liable but found the individual defendants not liable)." 602 F.2d at 897.
 
 
 19
 We held in Sethy that "the mere fact that Sethy was not victorious as to all defendants does not automatically bar an attorney's fee award." 602 F.2d at 897. In reaching this conclusion, we noted our agreement with the following language from the First Circuit's decision in Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978):
 
 
 20
 (p)laintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. However, the amount of attorney's fees they receive should be based on the work performed on the issues in which they were successful.
 
 
 21
 State appellants ask us to hold that the district court violated the standard we approved in Sethy by awarding fees for all services performed, rather than limiting compensation to work related to the issues on which plaintiffs were successful.
 
 
 22
 It is not clear to us what standard the district court applied in holding that the entire amount of attorney's fees requested was reasonable. The district court stated that "the approach taken here fulfills the Ninth Circuit's directives as expressed in Sethy and Molina", yet in its analysis of the existing authorities the district court also stated: "The Senate Report indicates Congress intended that the prevailing party's counsel should be compensated for all time reasonably expended on the case, whether or not that party ultimately prevailed on some of his or her contentions." Payment for "all time reasonably expended" clearly is contrary to the test set forth in Sethy. State inmates argue quite persuasively that in the matter sub judice only one constitutional challenge was presented in the complaint, i. e., the rules and regulations promulgated by the Oregon Corrections Division violated due process. Relief was sought under one statute section 1983. The district court held that some of the rules and regulations did violate the inmates' constitutional rights. Unfortunately, the district court did not indicate that the inmates had effectively succeeded on all issues presented or that its determination of the amount was based solely on work performed on those issues as to which they prevailed. In fact, the court ruled against the inmates on several issues. It is quite possible that the district court determined the amount claimed was a reasonable fee for services performed on the successful issues in light of its comment as to "the almost unremarkable modesty" of the amount claimed.
 
 
 23
 In view of the uncertainty in this record, we must remand the matter to the district court for a specific determination of the amount of time spent by counsel on the prevailing issues and the fee which would be reasonable for such services. The district court may in its discretion hold a further evidentiary hearing for this purpose. It is quite possible that the district court will again conclude that the total amount claimed was reasonable. We simply cannot tell from this record.
 
 
 
 *
 We substitute the name Robert J. Watson, the successor to the original defendant Amos E. Reed, as the Administrator of the Oregon Corrections Division, pursuant to Fed.R.App.P. 43
 
 
 **
 We substitute the name of Leola M. Gierloff, the successor to the original defendant T. G. Toombs, as the Superintendent of the Oregon Women's Correctional Center, pursuant to Fed.R.App.P. 43
 
 
 ***
 Hon. William P. Copple, United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 We should, note, however, that in Brown v. Bathke, 588 F.2d 634, 638 (8th Cir. 1978), the court held that "(t)he awarding of attorney's fees to a prevailing party in a civil rights action for work done in other related proceedings lies in the sound discretion of the federal district court." It is also noteworthy that in Brown v. Bathke, the services in the state court occurred prior to the filing of the federal action
 
 
 [2]
 No issue is raised as to whether the inmates were "prevailing parties." State appellants conceded in the district court that the inmates were entitled to an award of attorney's fees. State appellants challenge the computation of the amount of the fee