Orvin C. STANWOOD, Plaintiff,

v.

Ralph GREEN, Jr., R. Heenan, Jack Whitfield, Holly V. Holcomb, John Earhardt, S. Tony Zarbano, Charles M. Strawn, M.R. Moffit, Lonnie Van Elsberg, Frank Rema, William Miller, G. Woodrow Robison, Irene Johnson, Claude E. Waldrop, Leslie D. Miller, Richard Capehart, Ron Leonard, Jack L. Beebe, Sr., Robert A. Emmett, Edward E. Stevenson, David Tankersley, Veral Tarno, and Coos County, a political subdivision of the State of Oregon, Defendants.

Civ. No. 72–981.

United States District Court,
D. Oregon.

Jan. 17, 1983.

Michael R. Stebbins, Hayner, Waring, Stebbins & Coffey, North Bend, Or., Jerome E. LaBarre, Portland, Or., for plaintiff.

Peter Kasting, Coos County Counsel, Paul L. Burgett, Coos County Dist. Atty., Coquille, Or., Ronald E. Bailey, Donald E. Murray, Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland, Or., for defendants.

JAMES M. BURNS, Chief Judge:

This is, I hope, the last stage of litigation concerning jail conditions in Coos County, Oregon. The parties agreed to a consent decree, signed in February 1982, that requires the defendants (the County and its relevant officials) to initiate a broad range of changes, including the construction of a new jail facility along the lines of American Correctional Association standards. Plaintiff's attorneys seek an award of attorney's fees as the "prevailing party" pursuant to 42 U.S.C. § 1988. The defendants do not dispute that the plaintiff prevailed; rather, the fiercely contested issue is what amount of attorney's fees should be allowed.

Plaintiff Stanwood, then recently an inmate in the Coos County Jail in Coquille, brought this section 1983 civil rights case in 1972 to enjoin the defendants from operating allegedly unconstitutional facilities. In August 1976, the parties agreed to, and I signed, a consent decree that obliged the County to ameliorate the overcrowded, unsanitary, and other like conditions. For example, rather than make expensive structural repairs to the cramped North Bend Holding Facility, the County agreed to hold prisoners there no longer than seventy-two hours.

More than 4 years later, to renovate the County Jail in February 1981, the County threatened to move all Jail inmates to the North Bend Holding Facility. The County planned to confine the inmates there for the duration of the month-long renovation project. The plaintiff's attorneys filed a motion seeking to require the defendants to show cause why the defendants should not be held in contempt for failure to comply with the 1976 consent decree. The County agreed not to move the prisoners pending the resolution of this and other issues, and, with the strong encouragement of this court, the parties set about to negotiate a settlement. These negotiations produced a proposed amendment consent decree, which

the parties submitted to the court in November 1981. I signed it, following a hearing in Coquille in December 1981, but emphasized that certain amendments, mostly technical, would be needed. The amended decree was signed in February 1982. This decree substantially modified and enlarged the remedial steps to be taken by the County.

I. *Threshold Issues*

■ Under section 1988, it is within the discretion of the court whether to allow reasonable attorney's fees. To determine the amount of the fee award, the court is to apply the standards set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). However, before addressing and applying the *Johnson* factors to this case, I must discuss and decide two significant threshold issues: the retroactivity (if any) of the award and consideration (if any) to be given the County's financial condition.

■ A. *Retroactivity.* The plaintiff seeks attorney's fees retroactive to his filing of the case in 1972. The initial consent decree was signed in August 1976. At that time, a party serving as a "private attorney general" could not recover attorney's fees absent specific legislative authorization. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In August 1976, there was no such authorization. Later Congress amended section 1988 to authorize retroactive fee awards in civil rights cases pending on the date of enactment, October 19, 1976. *Hutto v. Finney*, 437 U.S. 678, 694 n. 23, 98 S.Ct. 2565, 2575 n. 23, 57 L.Ed.2d 522 (1978). After the consent decree was signed in August 1976, this court was not involved in this case until February 1981, when Stanwood's attorneys filed the contempt motion. Accordingly, an award retroactive to 1972 is not appropriate in this case. However, because I am sailing unchartered waters, I make alternative findings, one covering the

period 1976–1982, the other 1972–76. This way, if this case is appealed, and the court of appeals finds my ruling incorrect, the time and expense of an extra appeal may be avoided.

The Ninth Circuit has not dealt with the retroactivity question under the specific circumstances here. *See Sethy v. Alameda County Water District*, 602 F.2d 894, 897 (9th Cir.1979) (per curiam), *cert. denied*, 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980) (case pending for section 1988 purposes if court's mandate has not issued on date of enactment); *Bartholomew v. Watson*, 665 F.2d 910 (9th Cir.1982) (discussed, *infra*, note 1). However, courts in the Fourth, Fifth, and Seventh Circuits have reviewed this issue in some detail. These decisions reflect a method of analysis which I find sound, and which I believe will be adopted by this Circuit.

This case would have been pending on October 19, 1976, if there had then been a substantive claim to be resolved. *Peacock v. Drew Municipal Separate School District*, 433 F.Supp. 1072, 1075 (N.D.Miss.1977), *aff'd sub nom. Andrews v. Drew Municipal Separate School District Board of Trustees*, 611 F.2d 1160 (5th Cir.1980) (per curiam). The strongest evidence that a case is pending on the October 1976 date of enactment is that the court was holding proceedings in the case. However, "[t]he mere pendency on the date of enactment . . . of supplemental proceedings to effectuate a prior final judgment is not . . . sufficient to convert an action into such a 'pending action' as to warrant an award of attorney fees . . . ." 433 F.Supp. at 1075. In *Peacock*, the plaintiffs filed an action in 1973 challenging the school district's policy prohibiting the employment of unwed parents. That year, the court enjoined the enforcement of the policy and announced that it would award back pay to those parents injured by the policy. In December 1976, the court resolved the specific amount of back pay due the plaintiffs. The pendency of the back pay amount proceeding did not make *Peacock* a pending case on the date of enactment.

On October 19, 1976, no motion in *Stanwood* was before this court. Nor would one be for nearly four and one half years. From a purely technical standpoint, *Stanwood* was not an active case. The County claims the case would not have been pending even if Stanwood's motion had been before this court on the date of enactment. *See Escamilla v. Santos,* 591 F.2d 1086 (5th Cir.1979) (per curiam). In *Escamilla,* the plaintiffs filed a class action lawsuit in 1974 challenging living conditions in the jail of Webb County, Texas. The suit ended with a consent decree in July 1976. On October 1, 1976, the plaintiffs filed a motion concerning the County's failure to comply with the consent decree. This motion was before the court on the date of enactment. However, the court of appeals found motion was "in the nature of a supplemental proceeding to effectuate the prior consent judgment and [was] insufficient to make a pending active issue." *Id.* at 1088 n. 1 (citing *Peacock,* 433 F.Supp. at 1075–76). But the Fifth Circuit does not describe the relief the plaintiffs sought or the nature of the County's noncompliance, factors that are relevant to an assessment of whether litigation has been concluded. Therefore, I cannot and, indeed, need not, decide whether the *Escamilla* analysis requires the same result here.

Enforcement of a consent decree or remedial order may be more important than an initial finding of liability. In *Bolden v. Pennsylvania State Police,* 491 F.Supp. 958 (E.D.Pa.1980), the plaintiffs filed a class action lawsuit in 1973 challenging the defendant's discriminatory employment practices. The suit settled in 1974 by consent judgment. The defendant was under court order to develop job-related hiring and promotion criteria, demonstrate their validity to the district judge, and use them to remedy past discrimination. As such, "the consent decree expressly contemplated a continuing judicial proceeding." *Id.* at 961. Consequently, the court awarded attorney's fees retroactive to 1973.

On October 19, 1976, this court did not contemplate that this would be a continuing judicial proceeding. The 1976 consent decree details in some forty pages the remedial steps the County was to take. The parties could have, but did not, draft the consent decree to include this court's continuing involvement. *Cf. Capps v. Atiyeh,* 495 F.Supp. 802 (D.Or.1980), *vacated and remanded,* 652 F.2d 823 (9th Cir.1981) (per curiam) (State ordered to submit plan to alleviate overcrowded prisons). That the County was to initiate its policy changes 120 days after the signing of the August 1976 decree—a date after October 19, 1976—does not mean that substantive issues remained to be resolved. When it signed the decree, the County was obliged to act. By contrast, it may have been a different case if the County were to have submitted its new policies for this court's approval at the end of 120 days. Then a fee award might be appropriate.

Stanwood's attorneys point out that this court maintained jurisdiction over the subject matter and parties. While this is true, it does little more than describe a court's role in enforcing compliance with its orders. Any decree carries with it the potential for further proceedings, *e.g.,* motions to modify and proceedings to enforce compliance where noncompliance is alleged. Congress did not intend for a court's passive supervision of a consent decree through its general equitable powers to create a pending case.

Of course, it may be another matter entirely if the court does actively supervise compliance with its remedial order. This was the case in *Gautreaux v. Chicago Housing Authority,* 690 F.2d 601 (7th Cir.1982). In 1965, Gautreaux challenged CHA's low-income housing program. In 1969, the district court found that CHA engaged in intentional discrimination and entered a remedial order. The district court retained jurisdiction and frequently—seventeen times in a dozen years—modified its injunction to counter the CHA's evasive maneuvers. While the remedial order in *Gautreaux,* unlike the consent judgment in *Bolden,* did not expressly contemplate judicial approval of the defendant's remedial steps, it was clear from the entire course of the litigation that this was a continuing judicial

proceeding. The court properly awarded the plaintiffs attorney's fees retroactive to 1965. This was simply not the case in *Stanwood,* in which the court was not involved for over four years.

To be a pending case, it is important no hiatus or period of dormancy occurs. Otherwise, an expansive view of pendency in equitable proceedings may permit long dormant cases to be reopened solely for the purpose of obtaining attorney's fees not available when the cases were in active litigation. *See Gautreaux,* 690 F.2d at 610. Stanwood's attorneys were certainly aware that they had spent over two hundred hours on this case as of October 19, 1976. Yet, not on October 19, 1976, nor on any day thereafter for a period of five and one-half years did Stanwood's attorneys ask for attorney's fees. Presumably, had this case been pending on the date of enactment, Stanwood's attorneys would not have rested so long on their rights. *See Wheeler v. Durham City Board of Education,* 585 F.2d 618, 623 (4th Cir.1978). While I do not mean to suggest that Stanwood's counsel reopened this case to obtain attorney's fees, this is the type of case where that abuse could manifest itself. I do not believe Congress intended that a district judge base an attorney's fee award on an evaluation of the attorney's motives. In fact, it seems extremely doubtful Congress intended to include this kind of case among those which a court could consider for an attorney's fee award.[1]

■ B. *Financial Status.* The defendants urge the court to consider the County's parlous financial status in determining a reasonable attorney's fee award. This contention is not without support in the law. *See Knighton v. Watkins,* 616 F.2d 795, 799 (5th Cir.1980). However, the factors adopted by the Ninth Circuit for determining section 1988 fee awards do not include the consideration of a defendant's lack of financial resources. *See Fountila v. Carter,* 571 F.2d 487, 496 (9th Cir.1978).

While the Ninth Circuit has not ruled directly on this question, it has held that a court may award attorney's fees even if the prevailing plaintiff can pay for his own attorneys. *Metcalf v. Borba,* 681 F.2d 1183, 1189 (9th Cir.1982). If a prevailing plaintiff's financial condition is irrelevant to the determination of a reasonable attorney's fee, so should the defendant's wherewithal be irrelevant, absent extreme or special circumstances not present here. In section 1988, Congress intended to encourage victims of governmental discrimination to vindicate their rights without being deterred by the financial burden of doing so. This logic supports the exclusion from a court's consideration of the plaintiff's and the defendant's financial conditions.[2] Just as a

1. Citing *Bartholomew v. Watson,* 665 F.2d 910 (9th Cir.1982), Stanwood's attorneys contend that because the 1982 consent decree was an amended version of the 1976 decree, they should recover fees for work leading to the initial decree. There is language in that case which, divorced from its factual foundation, tends to support this contention. In *Bartholomew,* the court awarded retroactive attorney's fees because the pre-1976 work was an "essential step" in obtaining the final affirmative relief. However, in *Bartholomew,* the court was not faced with a case in which there had been a four-year hiatus following the issuance of a complete and comprehensive decree.

In 1973, inmates filed an action in this court challenging Oregon's procedures for placing inmates in administrative segregation. The court stayed the case to await a ruling by the state courts on the challenged procedures' compliance with new legislation. In 1974, the state courts decided that issue adversely to the inmates. Despite the final determination of the state law claim, the federal action recommenced. The plaintiffs ultimately prevailed in 1979. *Bartholomew v. Reed,* 477 F.Supp. 223 (D.Or.1979), *aff'd in part, rev'd in part sub nom. Bartholomew v. Watson,* 665 F.2d 915 (9th Cir.1982).

This court awarded attorney's fees for the unsuccessful state action. *Bartholomew* was not pending on October 19, 1976, because the state action was an essential step in determining the final result. Rather, the case was pending because substantive, *i.e.,* federal law, issues remained to be resolved as of the date of enactment. Even though the case was pending, the fee award for the unsuccessful action was proper only because the state action was an essential step in obtaining the final federal judgment.

2. To the extent *NOW v. Bank of California,* 680 F.2d 1291, 1293–94 (9th Cir.1982) (per curiam), could be read to approve of a court's reducing a fee award based on the plaintiff's lack of finan-

rich plaintiff should not have to pay for his full measure of civil rights, a prevailing plaintiff should not have to shoulder the cost of obtaining his civil rights because the discriminating public body is poor. In the absence of Ninth Circuit authority to the contrary, I will not employ the County's financial difficulty to reduce an otherwise appropriate fee award.

■ It is, however, within the court's discretion to delay the entry of judgment to ameliorate the impact of a large fee award. *Hutto,* 437 U.S. at 692 n. 18, 98 S.Ct. at 2574 n. 18. Therefore, I will direct the Clerk to enter judgment at this time for one-half of the attorney's fee judgment, with entry of judgment for the second half next year.

## II. *The Award.*

■ A. *Lodestar.* The lodestar amount is derived by multiplying the number of hours spent on the case by a reasonable hourly rate billed by the attorney. The hourly rate Mr. LaBarre bills his clients for complex litigation is $115 per hour. The similar hourly rate for Mr. Stebbins is $70 per hour. Law clerks and legal assistants are billed at $25 per hour.[3]

B. *Time on Merits.* Through October 18, 1976, Mr. LaBarre recorded 231.70 hours. His law clerks worked 77.90 hours, most of which was unrecorded time. Mr.

Stebbins was not involved in the case until after that date.

Since October 19, 1976, Mr. LaBarre recorded 195.50 hours and logged 22.70 hours of unrecorded time. His law clerks recorded 127.25 hours. Since that date, Mr. Stebbins recorded 169.30 hours and logged 200 unrecorded hours. His legal assistant spent 53.10 hours on the case.

C. *Time on Attorney's Fees Proceedings.* Mr. LaBarre recorded 286.70 hours through October 13, 1982. His law clerks recorded 29.40 hours. Mr. Stebbins recorded 135.20 hours through October 12, 1982. His legal assistant worked 14.30 hours.

D. *Expenses.* Mr. LaBarre incurred $5,530.31 in expenses, including expert witness fees. Mr. Stebbins expended $1,331.68.

E. *Johnson Factors.*[4] Reviewing the *Johnson* factors with respect to this litigation,[5] I find as follows:

1. *Time and Labor Required.* Without demeaning the contributions of Mr. Kasting and the other defense counsel, Mr. LaBarre's and Mr. Stebbins's time and efforts were reasonable and necessary. The difficult and complex issues justified the recorded hours. I accept them as stated. However, I am concerned the hours Mr. LaBarre and Mr. Stebbins spent to prove their entitlement to attorney's fees are far too high. It simply should not require over four hun-

---

cial resources, the case does not require a different result here. In *NOW v. Bank of California,* the plaintiffs brought a frivolous motion. The court awarded the Bank attorney's fees pursuant to 42 U.S.C. § 2000e–5(k). The plaintiffs argued they could not bear the cost of the award. The court found otherwise.

When Congress passed section 1988, it intended to encourage civil rights litigation. Because the fear of incurring a large fee could discourage persons from asserting their rights, a court might properly consider the plaintiff's financial plight. No similar policy supports the consideration of the defendant's lack of resources.

3. Determination of the hourly rates is made as of the time of the award rather than, as the County contends, as of the time the attorneys rendered the services. *See Suzuki v. Yuen,* 678 F.2d 761, 763 (9th Cir.1982). In any event, this argument is of little moment. Stanwood's attorneys rendered the bulk of the services for

which they are awarded fees beginning in February 1981.

4. The *Johnson* litany has been criticized recently. *See Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830, 839–40 (9th Cir.1982). However valid this criticism may be, it does not substitute in ease of application for a "laundry-list" of factors.

5. I would follow Judge Panner's lead and make the *Johnson* factors a baker's dozen by considering the efforts of the attorneys to bring the case to a prompt and reasonable conclusion. *Roberts v. Speelman,* No. 81–6096 (D.Or. Sept. 8, 1981). *Gibson v. Foster,* No. 68–614 (D.Or. May 12, 1981). In this regard, Stanwood's attorneys hammered out a settlement rather than insisting on a protracted court trial. *Cf. Capps v. Atiyeh,* 495 F.Supp. 802 (D.Or.1980), *vacated and remanded,* 652 F.2d 823 (9th Cir.1981) (per curiam).

dred hours to litigate an attorney's fee proceeding. This is particularly true where counsel are experienced in attorney's fee requests and where the time awarded on the merits barely exceeds the time on the fee request. The "attorney's fee" tail must not be allowed to wag the "merits" dog. But, because it was the County that unnecessarily expanded the scope of the fee proceedings. I will not reduce the hours spent on this phase of the case. Plaintiff's counsel spent 112.70 hours preparing their initial motions and readying themselves for the fee hearing. They recorded the rest of their hours responding to the County's document discovery, deposition request, and memorandum in opposition.[6] I believe plaintiff's counsel's time on the fee motions to be at the upper end of, if not to exceed, the range of reasonableness. However, I cannot specify any individual time entries as being excessive or unnecessary. *See Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830, 837–38 (4th Cir.1982).

Mr. Stebbins claims to have spent 200 unrecorded hours monitoring the County's compliance with the 1976 decree. While I do not doubt that he spent many hours monitoring, because unrecorded hours are not attended with the same regimen as are those billed to clients, I will reduce those hours by 25%.

The law clerks' and legal assistants' hours are reasonable. I accept them as stated. The attorneys' expenses also appear to have been reasonable for a suit of this size and scope. Therefore, I approve the expenses as stated, including the cost of the expert witnesses used to counter the County's broad attack on the fee request.

2. *Novelty and Difficulty of the Case.* This was the first comprehensive jail reform case brought in this court. The Ninth Circuit has only recently delineated the scope of a prisoner's rights in his living conditions. *Hoptowit v. Ray,* 682 F.2d 1237 (9th Cir.1982); *Wright v. Rushen,* 642 F.2d 1129 (9th Cir.1981); *see Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Consequently the issues involved in this case were sufficiently new and complex to make their presentation difficult.

3. *Skill Required to Perform Legal Services.* To expeditiously litigate the case, the attorneys were required to be skilled in very specialized areas of the law. The case demanded substantive and procedural expertise. The County fought hard and, until the attorney's fees phase, well.

4. *Preclusion of Other Employment by the Attorneys.* I find no basis for disbelieving the attorneys' assertion that the conduct of this case precluded some alternative employment. This case demanded much of their time.

5. *Customary Fee.* I accept, for the most part, the testimony of Stanwood's attorneys' expert witness, Mr. Charles J. Merten, that the merits fee request is within the range of reasonableness both as to the total hours and the hourly rates. Mr. Merten discounted Mr. Stebbin's unrecorded hours by 20%. As discussed above, I believe a further reduction of 5% to be in order.

6. *Whether the Fee is Fixed or Contingent.* The initial lawsuit and the contempt proceeding asked for injunctive relief. Because this case did not involve a damage award, there was no contingent fee aspect to evaluate. The attorneys appropriately request a premium over their hourly fee. This recognizes the risks counsel assumed in this case.

7. *Time Limits Imposed by the Circumstances.* During the early phase of this case, culminating in the 1976 decree, the time limits in this case were typical of those for other major cases in this district. However, during the most recent phase of the case in which the County planned the imminent transfer of prisoners to the North Bend Holding Facility, time pressures became more acute.

---

**6.** In response to the plaintiff's attorneys' motions, the County's attorneys filed a fifty page memorandum with over three hundred pages of exhibits. This response initiated depositions and a barrage of additional memoranda. This court was required to hold conferences and evidentiary hearings on May 26, May 28, June 18, and July 14, to resolve disputes that need not have been in issue.

8. *Results Obtained.* This criterion ordinarily requires the court to look at the results the petitioning attorney obtained for his client. In this regard, Stanwood and a large group of persons—those who will face incarceration in Coos County—have received substantial and direct benefits from the improved jail conditions. I note, in addition, that many would believe the County and its residents benefit from having civilized jail facilities.

9. *Experience, Reputation and Ability of the Attorneys.* The County has made no showing to counter the claim of Mr. LaBarre and Mr. Stebbins that they have extensive experience in the areas related to this case, which enabled them to handle the complex issues efficiently and in a minimum amount of time. Their reputations and ability no doubt contributed to the successful settlement of this case.

10. *Undesirability of this Case.* This case was controversial, taxing to all concerned. It inspired nearly as many pages of newsprint as it did of legal memoranda. I cannot fail to recognize that Stanwood's attorneys lost business because of their association with an unpopular cause. *See Jordan v. Multnomah County,* No. 80–841, slip op. at 7 (D.Or. June 26, 1981), *aff'd in part, rev'd in part,* 694 F.2d 1156, at 1157 (9th Cir.1982) (per curiam).

11. *Nature and Length of the Professional Relationship.* While I considered this factor, it was not significant in my determination.

12. *Awards in Similar Cases.* The award announced today is in keeping with those in comparable cases. *E.g., Rivera v. City of Riverside,* 679 F.2d 795 (9th Cir. 1982), *petition for cert. filed,* 51 U.S.L.W. 3075 (U.S. July 29, 1982) (No. 82–156)

($243,343.75); *Thornberry v. Delta Air Lines, Inc.,* 676 F.2d 1240 (9th Cir.1982), *petition for cert. filed,* 51 U.S.L.W. 3099 (U.S. Aug. 2, 1982) (No. 82–192) ($224,334.88 pursuant to section 2000e–5(k)); *Southeast Legal Defense Group v. Adams,* 436 F.Supp. 891 (D.Or.1977), *aff'd and remanded,* 657 F.2d 1118 (9th Cir.1981) ($280,000); *Grudzinski v. Mack,* No. 75–1095 (D.Or., Findings and Recommendation filed Jan. 28, 1980) ($270,000).

F. *Multiplier.* The lodestar amount may also be increased or decreased upon a consideration of the *Johnson* factors. *Manhart v. City of Los Angeles, Department of Water & Power,* 652 F.2d 904, 908 (9th Cir.1981), *petition for cert. filed,* 51 U.S. L.W. 3022 (U.S. Jan. 22, 1982) (No. 81–1399).

I conclude that it is appropriate to increase the lodestar amount by 1.75. I do so for the following reasons, substantially as outlined above: contingent nature of the fee arrangement; difficulty of the case; skill required; undesirability of the case; and the preclusion of alternative employment.[7] This is consistent with awards in similar cases. *Hein v. Oregon College of Education,* No. 79–757 (D.Or. Aug. 17, 1982) (2.0); *Jordan, supra,* (June 26, 1981, Aug. 13, 1982, Nov. 19, 1982) (1.5); *Roberts v. Speelman,* No. 78–1008 (D.Or. Sept. 8, 1981) (2.0).

If I were to award fees for work leading to the 1976 consent decree, I would employ a multiplier of 2.0 to that lodestar figure. At that time, the issues were more novel and difficult, and the case more unpopular.

The lodestar amount is a reasonable award for the time spent on the attorney's fee request. Based on the *Johnson* factors, there is no justification for a multiplier on

7. The County claims it was planning to build a new facility and that the 1982 consent decree did not bring about this change. In making this claim the County does not withdraw its stipulation in the consent decree that, for purposes of section 1988, Stanwood is the prevailing party. Rather the County believes its "spirit of cooperation and compromise" made this a simple and risk-free venture for the plaintiff and his attorneys, and, therefore, the court

should not apply a multiplier. I disagree. This contention is not supported by the facts. Coos County officials stated to the press that their existing facilities were not adequate. However, the officials did not say what they would do about their inadequate facilities, nor did they begin to do anything until after Stanwood's attorneys filed the February 1981 contempt motion.

the attorney's fees proceedings. However, given the enormous effort to which the County put Stanwood's attorneys in its opposition to their motions, a multiplier might be appropriate for the time Mr. LaBarre and Mr. Stebbins spent after May 17, 1982. *See Jordan, supra,* slip op. at 5 (Nov. 19, 1982). While it is a close call, I conclude the lodestar amount adequately compensates counsel for this phase of the litigation.

III. *Conclusion*

Stanwood's attorneys are entitled to an award of $134,444.31. I also award $6,861.99 in expenses. If this case had been pending on October 19, 1976, I would award an additional $58,248.50.[8] The computation of these figures is detailed in the appendix. The entire award will bear interest at the statutory rate from the date of my original opinion, December 13, 1982. 28 U.S.C. § 1961.

The foregoing constitutes findings and conclusions, Rule 52, Fed.R.Civ.P. If either side believes that other, or different, findings and conclusions are necessary, they should submit proposed amended findings and conclusions within 10 days. Thereafter, I will issue an order directing the clerk to enter judgment against the defendants in the amount of one half of the award, with entry of judgment for the remainder on July 1, 1983.

## APPENDIX

### Time on the Merits Since October 19, 1976

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|
| LaBarre | 218.20 | × $115 | $25,093.00 |
| Law Clerk | 127.25 | × $ 25 | $ 3,181.25 |
| Stebbins | 319.30 | × $ 70 | $22,351.00 |
| Legal Assistant | 53.10 | × $ 25 | $ 1,327.50 |
| | | Lodestar subtotal | $51,952.75 |
| | | Multiplier | 1.75 |
| | | Total | $90,917.31 |

### Time on the Attorney's Fee Proceeding

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|
| LaBarre | 286.70 | × $115 | $32,970.50 |
| Law Clerk | 29.40 | × $ 25 | $ 735.00 |
| Stebbins | 135.20 | × $ 70 | $ 9,464.00 |
| Legal Assistant | 14.30 | × $ 25 | $ 357.50 |
| | | Lodestar subtotal | $43,527.00 |
| | | Merits | $90,917.31 |
| | | Attorney's fee | $43,527.00 |
| | | Total Award | $134,444.31 |

### Time on the Merits Through October 18, 1976

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|
| LaBarre | 231.70 | × $115 | $26,645.50 |
| Stoll | 4.25 | × $125 | $ 531.25 |
| Law Clerk | 77.90 | × $ 25 | $ 1,947.50 |
| | | Lodestar subtotal | $29,124.25 |
| | | Multiplier | 2.0 |
| | | Total | $58,248.50 |

8. This figure includes 4.25 hours for N. Robert Stoll, Mr. LaBarre's partner at the inception of this case. If I were to award fees for the pre-1976 period, I would allow him an hourly rate of $125—and increase the lodestar figure by a factor of 2.0. This totals $1,062.50.