**Vincent J. MESOLELLA, Plaintiff,**

v.

**CITY OF PROVIDENCE, et al., Defendants.**

Civ. A. No. 80–125 S.

United States District Court,
Rhode Island.

Feb. 1, 1984.

Marcaccio & Marcaccio by Thomas L. Marcaccio, Jr., Decof & Grimm by Leonard Decof, Vincent T. Cannon, Jay S. Goodman, Providence, R.I., for plaintiff.

Charles Pisaturo, City Sol., John Rotondi, Jr., Deputy City Sol., Gerard M. DeCelles, Sp. Counsel, Providence, R.I., for defendants.

### OPINION AND ORDER

SELYA, District Judge.

This matter is before the court on the plaintiff's application for counsel fees and

disbursements pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.[1] Since the situation at bar presents a novel aspect, perscrutation of the travel of this litigation is essential.

Vincent J. Mesolella, plaintiff herein, owned certain real estate on Plainfield Street in the city of Providence. Applicable zoning had for many years allowed multi-family use, the property being zoned as "Residential 3." In September of 1977, Mesolella applied for government-subsidized financing to permit the construction of forty-two units of low-income "family" housing upon the property, in pursuance of 42 U.S.C. § 1437f. The application was well received, and funds were reserved by the state agency, Rhode Island Housing and Mortgage Finance Corporation, for this purpose. In March of 1978, Mesolella submitted to the city plans preliminary to his anticipated request for a building permit (the "permit").

Various municipal officials, some of whom are defendants here, reacted with considerable umbrage. As a result, when the formal application for the permit was submitted to the city on May 8, 1978, it was pigeon-holed. In short order, the defendants, in a classic example of "spot zoning," passed an amendment to the municipal zoning ordinance, the effect of which was to single out the subject property and to change its zoning designation to "Residential 1" (single-family use). The amendment was signed into law by the mayor on August 10, 1978. The plaintiff, outraged no little and quite some, promptly filed an action in Providence County Superior Court (there docketed as C.A. No. 78–2638) to set aside the amendment ("*Mesolella I*"). The plaintiff also prayed for ancillary relief in the form of money damages.

Following a trial on the merits, the superior court invalidated the amendment. The city appealed. The plaintiff then moved for summary affirmance of the superior court's judgment, but such motion was denied. *Mesolella v. City of Providence*, 410 A.2d 134 (R.I.1980).

At roughly the same time, the plaintiff, on March 17, 1980, brought the instant action, alleging that the conduct of the named defendants (the city and a bevy of municipal officials) had abridged his federally-protected constitutional rights. 42 U.S.C. §§ 1981, 1983, 1985. While this action was pending, the state supreme court heard the appeal and affirmed the superior court's decision. *Mesolella v. City of Providence*, 439 A.2d 1370, 1375 (R.I.1982). *Mesolella I* was remanded for an accounting as to damages, the plaintiff asseverating that the municipal monkey-wrench had cost him the previously-arranged financing. The Honorable William E. Powers III, a retired justice of the state supreme court, was appointed by the superior court as a special master for purposes of the damage assessment in *Mesolella I*. After extended hearings, Judge Powers, in mid-1983, filed a report recommending the award of substantial monetary damages to the plaintiff.[2] The state superior court confirmed the award as fashioned by the special master, and the defendants again appealed. In this posture, *Mesolella I* is now pending anew before the Rhode Island Supreme Court.

In the meantime, the instant action lay, for the most part, fallow. There is not a scintilla of proof to show that any of the proceedings in this court were in any way instrumental to the plaintiff's accomplishments in *Mesolella I*, nor to show any

**1.** 42 U.S.C. § 1988 provides in pertinent part: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C. 1681 et seq.], or in any civil action or proceedings, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

**2.** The special master fixed compensatory damages at $715,182.82. The award carried with it interest (an incremental sum of $455,973.17 as at the date of judgment was entered in the state court) and costs.

coordination in the simultaneous prosecution of the two proceedings.

On October 7, 1983, a status conference was held in this court. Plaintiff was at that time undecided whether or not there would be any need to proceed to trial here. The court ceded to the parties a one month moratorium to focus on this decision. When that breathing spell expired without further action, the court (on November 8, 1983) issued a trial notice, commanding the parties to appear for empanelling of a jury on November 18. On that date, the parties presented to this court an executed stipulation dismissing the instant action without prejudice "in light of the pending state court action." The stipulation further provided that the contemplated dismissal was to be "without prejudice to the right of plaintiff to file an application for fees with the court, and with preservation of all of the defendants' objections thereto." The court entered the stipulation on November 18 and ordered dismissal of the action on the terms agreed to by the parties; no jury was empanelled.

Mesolella then petitioned pursuant to 42 U.S.C. § 1988 for an award of the fees and expenses associated with his prosecution of this action. The defendants objected. A hearing was held on January 20, 1984. At that time, the plaintiff declined the court's invitation to offer evidence demonstrating, *inter alia*, a causal link between the services rendered herein and the success enjoyed by Mesolella to date in the state court proceedings. And, in answer to a direct inquiry by the court, counsel for the plaintiff conceded that the claims asserted here could have been presented to the state court had an effort been made to amend the complaint in *Mesolella I.*

■ 42 U.S.C. § 1988 was enacted to assure effective access to the judicial process for those with meritorious civil rights grievances. *Hensley v. Eckerhart,* ── U.S. ──, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). In this manner, Congress sought "to guard against excesses of conduct or power" on the part of those acting under color of state law. *United Nuclear*

*Corporation v. Cannon,* 564 F.Supp. 581, 592 (D.R.I.1983). To trigger the mechanism of § 1988, a plaintiff must, of course, be a "prevailing party." *Hensley,* 103 S.Ct. at 1939 & n. 7. In *Hensley,* the Supreme Court approved the First Circuit's view that " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suits.' " *Id.* (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). *See also Busche v. Burkee,* 649 F.2d 509, 521 (7th Cir.1981), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1982).

■ In applying this formulation, it cannot be gainsaid that, in this circuit, "[a]ttorneys' fees may be recovered pursuant to 42 U.S.C. § 1988 when claims are made under 42 U.S.C. § 1983 [but] the judgment is founded on a claim other than the constitutional claim." *Lund v. Affleck,* 442 F.Supp. 1109, 1112 (D.R.I.1977), *aff'd,* 587 F.2d 75 (1st Cir.1978) (emphasis omitted). Such a phenomenon occurs where the constitutional issue is "substantial" and the dispositive non-constitutional claim grows out of a "common nucleus of operative fact." *Id.,* 442 F.Supp. at 1113. And, it is equally clear that, in appropriate circumstances, state court proceedings can be entwined with federal claims in such a way that the two become one for § 1988 purposes. *See, e.g., Bartholomew v. Watson,* 665 F.2d 910 (9th Cir.1982). Indeed, the same reasoning has, where the factual interplay warrants, been applied to state administrative proceedings. *E.g., New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980); *Turillo v. Tyson,* 535 F.Supp. 577 (D.R.I. 1982).

Yet, the facts are in each case dispositive. In *Bartholomew,* where the state court proceedings were initiated only after (i) the federal civil rights action had been filed and (ii) the federal court had invoked the abstention doctrine, *Railroad Commission v. Pullman,* 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941), it

seemed fair to hold that the state action was "an integral part" of the federal claim. *Bartholomew*, 665 F.2d at 913.[3] And conversely, "[w]here the state proceedings do not form an integral part of the federal remedy, but were intended to be a separate route, it would be inappropriate for the federal court to award attorney's fees ..." *Redd v. Lambert*, 674 F.2d 1032, 1037 (5th Cir.1982).

The principles underlying this dichotomy have been recognized by the First Circuit, which has plainly indicated the importance to this inquiry of causation *vel non*. *Nadeau*, 581 F.2d at 280–81.[4] *See also Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 273 (10th Cir.1975); *Bush v. Bays*, 463 F.Supp. 59, 64 (E.D.Va.1978). Such an investigation is, by its very nature, fact-intensive, *Pettigrew v. Exeter/West Greenwich School Committee*, No. 83–1485, slip op. at 5 (1st Cir. Jan. 18, 1984); further, the chronological sequence of events is a salient factor. *Nadeau*, 581 F.2d at 281; *Bush*, 463 F.Supp. at 64. And, while this case is novel in that the state court action (in which the totality of the relief obtained by Mesolella was achieved) at first preceded, and thereafter paralleled, the federal suit (which itself was productive of nothing), there is no logical reason to depart from the *Nadeau* calculus.

■ As noted above, the prosecution of this federal action added not a whit to the plaintiff's resounding state court victory. To hold that this case and *Mesolella I* were integral parts of the same whole would do violence to common sense. This litigation was unnecessary when brought, and its status as a useless appendage became ever clearer as plaintiff's march in *Mesolella I* drew nearer to Mecca. The superior court

action was first in time; consumed the energies of the parties; and afforded sweeping relief to Mesolella. There is no intimation that any discovery or admissions winnowed out in this litigation eased the way for progress in the state courts, nor has it been suggested that any claims were asserted here which could not have been caught up within the integument of *Mesolella I* (given proper attention to the pleadings in the state court). The instant action can in no way be perceived as a catalyst of or for the redress secured. *See Fischer v. Adams*, 572 F.2d 406, 410 (1st Cir.1978); *Marci v. New Haven*, 503 F.Supp. 6, 8 (D.C.Conn.1980); *Mental Patient Civil Liberties Project v. Hospital Staff*, 444 F.Supp. 981, 986 (E.D.Pa.1977).

In fine, the case at bar appears to have been an afterthought, conceived perhaps for additional bargaining leverage, or as insurance against the possibility of reversal by the state supreme court, or delay in the damage-phase trial in *Mesolella I*. Here, access was no problem: Mesolella had already exercised an adequate state remedy, and had in substantial measure accomplished his ends in that forum before turning to the federal courts. To allow fee-shifting in these circumstances would run at cross purposes with the congressional intent underlying 42 U.S.C. § 1988. Neither 42 U.S.C. § 1983 nor its fee award cousin, 42 U.S.C. § 1988, was intended to serve as bumbershoot coverage to guard against a rainy day. When the federal scheme is invoked solely to serve such a function, and the resultant suit contributes nothing to the plaintiff's triumph, attorney's fees should not be recoverable. To hold otherwise would be to encourage a mindless epiboly which pyramids litigation atop litigation, with no rhyme or reason

---

**3.** Indeed, the Ninth Circuit noted that the parties had gone to state court solely "because of the filing of the section 1983 civil rights claim in the federal court." *Bartholomew*, 665 F.2d at 912.

**4.** The court acknowledges that, because of the dismissal of plaintiff's action, some courts would hold that attorney's fees were not recoverable for that reason alone. *E.g.*, *Cramer v. Virginia Commonwealth University*, 486 F.Supp.

187, 191–92 & n. 7 (E.D.Va.1980). Given the result dictated by the facts here, *see* text *post*, this court declines, at present, to adopt so rigid a view. After all, when important rights are vindicated, it is not mandatory that formal relief in the court proceedings be obtained. *Nadeau*, 581 F.2d at 279. *See* S.Rep.No. 94–1011, 94th Cong., 2nd Sess. 5, *reprinted in* 1976 U.S. Code Cong. & Ad.News 5908, 5912.

other than to nourish the fatted counsel fee calf.

Since the instant action, and the services rendered therein, have been "completely superfluous" in achieving the success enjoyed by the plaintiff, *Nadeau*, 581 F.2d at 281, the application for fees and disbursements under 42 U.S.C. § 1988 cannot be granted.[5] It is, therefore, unnecessary to reach such other questions as (i) the effect of the stipulated dismissal and (ii) the attempted assertion of claims originally brought but thereafter dismissed as meritless.

*So ordered.*

---

**5.** And, to the extent that § 1988 invokes the court's discretion, the facts limned herein comprise special circumstances which lead inexorably to the conclusion that this discretion should be exercised to foreclose such an incremental attack on the municipal coffers.