Jack PATRICK

v.

The BOARD OF TRUSTEES OF the MI-
NEOLA INDEPENDENT SCHOOL
DISTRICT, et al.

Civ. A. No. TY–82–376–CA.

United States District Court,
E.D. Texas,
Tyler Division.

Dec. 17, 1984.

Charles H. Clark, Tyler, Tex., for plaintiff.

Robert D. Bruce, pro se.

Tracy Crawford, Tyler, Tex., for Board of Trustees, MISD, Knight, Jones, Bruce, Curbow, George, Puckett, Carr and Peacock, and Kim Harris.

Susan Henricks, Asst. Atty. Gen., Austin, Tex., for Texas Retirement System of Texas.

## ORDER

JUSTICE, Chief Judge.

Plaintiff's motion for attorney's fees under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, has been presented for resolution. At trial, the jury found that the defendants' action in not renewing his teaching contract violated his rights to substantive and procedural due process, as well as his right to free speech under the First Amendment to the Constitution of the United States. In the judgment entered in this action, plaintiff received nominal damages for each of these violations. In its findings the jury attempted to award plaintiff damages for lost pay, both past and future. In an order dated September 13, 1984, it was held that such an award was blocked by the decisions in *Mt. Healthy School District v. Doyle,* 429

U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and in *Laje v. R.E. Thomason General Hospital,* 665 F.2d 724 (5th Cir.1982). The jury gave no award to plaintiff for mental distress, nor did it make findings which would support reinstatement to his former position.

■■■ The Civil Rights Attorney's Fees Awards Act permits a court, in its discretion, to allow the prevailing party a reasonable attorney's fee. 42 U.S.C. § 1988. The Court of Appeals for the Fifth Circuit has held that, in addressing the question of whether a party has "prevailed" under § 1988, "the proper focus is whether the plaintiff has been successful on the central issue as exhibited by the fact that he has acquired the primary relief sought." *Taylor v. Sterrett,* 640 F.2d 663, 669 (5th Cir. 1981). Vindication of constitutional rights constitute such "primary relief," since the Fifth Circuit has held that nominal damages may serve as the basis for an award of attorney's fees. *Ryland v. Shapiro,* 708 F.2d 967, 976 (5th Cir.1983); *Basiardanes v. City of Galveston,* 682 F.2d 1203, 1220 (5th Cir.1982). The preliminary inquiry does not end, however, with a finding that a party has prevailed: the extent of success is important, and a prevailing party who achieves only partial success should receive only partial attorney's fees. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). As the Supreme Court has succinctly stated, "[t]he result is what matters," *id.*

In the instant litigation, plaintiff faced two distinct hurdles in obtaining the full relief which he sought. It was requisite that he show, first, that his contract was not renewed in violation of his constitutional rights. Secondly, in order to obtain damages and equitable relief, it was necessary that he prove that defendants lacked good cause to refuse to renew his contract. In the jury's findings, plaintiff cleared the first hurdle, but not the second. To allow a full recovery for this partial victory would clearly violate the principle set out in *Hensley,* that courts only award fees for those expenditures of time that are "reasonable

in relation to the success achieved," *id.* The fees here must be reduced by some amount.

■ The *Hensley* opinion addressed the procedure for reduction as well: "There is no precise rule of formula for making these [reduction] determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Id.* Because plaintiff was victorious concerning half of the issues necessary to recover fully, it appears that the attorney's fees he should receive for the hours reasonably expended in prosecuting this action should be halved.

In order to calculate the fees in this action, the amount of time reasonably spent in this litigation will be determined; this figure will be multiplied by a reasonable hourly rate; and one-half of this amount will be awarded to plaintiff's attorneys. Plaintiff has submitted documentation of the hours allegedly spent in litigating this action, and also affidavits reflecting the fees customarily charged for representation in similar actions by members of the Bar in the Eastern District of Texas. Defendant has objected to the number of hours and hourly rate claimed. Defendants make three basic objections: (1) that the hours spent in representing plaintiff before the Mineola School Board and the Texas Commissioner of Education are not properly considered as part of the time expended in the prosecution of this action; (2) that some of the claimed hours were unnecessary or inflated; and (3) that plaintiff's attorneys were over-staffed in this action.

The most significant objection, in terms of the number of hours involved, is the defendants' contention that the hours spent before Texas administrative boards cannot be taxed. The Fifth Circuit has addressed this issue and has held that attorney's fees can be awarded for state proceedings only when these proceedings form an "integral part of the federal remedy." *Redd v.*

*Lambert,* 674 F.2d 1032, 1037 (5th Cir. 1982). Defendants argue that Patrick's hearing before the Mineola School Board and the Texas Education Agency (TEA) are not the kind of costs taxable under *Redd.* Defendants call the court's attention to a case from the Court of Appeals for the Sixth Circuit dealing with a situation analogous to that in the case at bar, *Webb v. The County Board of Education of Dyer County, Tennessee,* 715 F.2d 254 (6th Cir. 1983). In that case, a black school teacher was dismissed. After he received an administrative hearing, the dismissal was upheld. He then brought suit in federal court, seeking an award of attorney's fees for representation both before the court and before the administrative board. The Sixth Circuit denied the latter, on the grounds that the plaintiff was not required to exhaust his administrative remedies before bringing suit in federal court. The question presented, then, is whether it was required that Patrick exhaust his state administrative remedies before bringing the present action.

In 1981, the Fifth Circuit issued its opinion in *Patsy v. Florida Board of Regentse,* 634 F.2d 900 (5th Cir.1981). That opinion required civil rights plaintiffs alleging a denial of equal protection to exhaust their state remedies before bringing federal suit. Were the exhaustion requirement of the Fifth Circuit's *Patsy* decision still good law, that requirement seemingly would have been a " 'necessary preliminary' to the enforcement of section 1983 in federal district court," the fees for which would be taxable under *Redd.* *Patsy,* however, was reversed by the Supreme Court. *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Specifically, the Court found that the Fifth Circuit's imposition of an exhaustion requirement impermissibly altered "the balance struck by Congress in establishing the procedural framework for bringing action under § 1983." *Id.* at 512, 102 S.Ct. at 2566.

In its recent decision in *Collins v. King,* 743 F.2d 248 (5th Cir.1984), however, the

Fifth Circuit functionally resurrected *Patsy*'s exhaustion requirement. There, an inmate brought a § 1983 suit against prison officials and guards, alleging that a disciplinary finding against him had violated his right to due process guaranteed by the Fourteenth Amendment. By agreement of the parties, a magistrate conducted all proceedings in the case. The defendants moved for summary judgment on the basis of the plaintiff's failure to appeal the prison disciplinary board's decision. The magistrate held that, "since Collins had failed to avail himself of the state process and procedures provided him, he could not complain that he had been denied due process." *Id.* at 250. The magistrate thereupon granted defendants' motion. Although the magistrate's order was entered in response to defendant's motion for summary judgment, which was premised on the defendant's factual showing that Collins had not exhausted his administrative remedies, the Fifth Circuit upheld the magistrate's action as a dismissal for failure to state a claim upon which relief can be granted. Collins' appeal was based partially on his contention that the magistrate's actions amounted to a re-imposition of the exhaustion requirement forbidden by the *Patsy* decision. The Court of Appeals affirmed, however, on the basis of "a cognate doctrine applicable only to procedural due process cases." *Id.*, at 252.

The court found this "cognate doctrine" in the Supreme Court cases of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). These cases hold that unintentional and intentional deprivation of property do not violate inmates' rights, if the state provides adequate post-deprivation remedies. In *Collins*, the Fifth Circuit

held that this doctrine, developed in situations involving the loss or destruction of the inmate's hobby kit and personal letters, respectively, applies to *all* § 1983 actions alleging a state deprivation of due process. The court stated that, in the context of state deprivation of Fourteenth Amendment rights, "the State's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." The court then held

> *Patsy* is not to the contrary, for we do not deal today with the exhaustion doctrine but rather with a cognate one: that in Section 1983 action, grounded in denial of procedural due process by a state, one must plead either or both that the state has established a procedure that itself is constitutionally deficient or that it has provided no adequate remedy for aberrational departures by its servants from proper procedures.

*Id.*, at 254. The question at issue is whether this "cognate doctrine," requiring § 1983 plaintiffs to allege the actual inadequacy of state procedures before being heard in federal court, makes these state procedures—in the case at bar, the hearings before the Mineola School Board and the Texas Education Agency—a "necessary preliminary" to the Federal hearing under the *Redd* decision.[1]

Patrick claimed and demonstrated that he was the victim of a biased school board employing unfair procedures. The *Collins* case requires that a plaintiff who does not attack post-deprivation procedures in the abstract must allege[2] and show that the state, in actuality, "provided no adequate remedy for aberrational departures by its servants from proper procedures." In order to do so, a plaintiff must go through these same state procedures, for otherwise it is impossible to manifest that

---

1. In doing so, the court does not give *Collins* retroactive effect. Given *Patsy*, no plaintiff could fairly be expected to anticipate the novel interpretation of exhaustion requirements under § 1983 contained in *Collins*. *Chevron Oil v. Huson*, 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). Under *Redd*, however, it appears that the court must decide which state procedures are "an integral part of the federal

remedy" at the time attorneys' fees are determined.

2. Patrick met the pleading requirement of *Collins* by alleging that the appeal procedure followed in his case by the TEA denied him due process. (Original Complaint at 11.)

state remedies are, in fact, inadequate. Hence, *Collins* has made the state administrative procedures a necessary prerequisite to a federal hearing, for any plaintiff whose claim of due process violation is not directed against state remedies inadequate on their face. To the extent that *Collins* contrasts this "cognate doctrine" to the discredited exhaustion requirement of *Patsy*, it creates a distinction which, while of academic interest, is of little practical import to those whose rights to due process have been violated by the state.

The "cognate doctrine" propounded in *Collins* renders the state remedies an "integral part of the federal remedy" for purposes of the *Redd* analysis. In *Redd*, the Fifth Circuit distinguished a case styled *Bartholomew v. Watson*, 665 F.2d 910 (9th Cir.1982). In that case, an inmate alleging that he had been denied due process by the Oregon State Corrections Division's administrative procedures was required by the federal court to challenge these procedures in state court before proceeding with his federal civil rights claim, pursuant to the judge-made doctrine of *Pullman* abstention.[3] Determining that the state proceedings were "an essential step in the presentation of the inmate's section 1983 claim," the court awarded him attorney's fees for these proceedings. *Id.*, at 914.

In *Redd*, the Fifth Circuit approved the *Bartholomew* reasoning but distinguished the facts of the case before it. The plaintiff's challenge in *Redd* was to the state procedure. He brought suit under the Tax Injunction Act, 28 U.S.C. § 1341, which allows federal review of state court pronouncements on state taxes solely by the Supreme Court, and only when a state Supreme Court has ruled on the claim. The Court continued:

> While the state proceedings in *Bartholomew* were a "necessary preliminary" to the enforcement of section 1983 in federal district court, the state proceeding in this case served an entirely different function. Congress chose in section 1341 to remit a plaintiff completely to his

state remedies so long as they are plain, speedy and efficient. Congress did not intend for the state proceedings to be a necessary preliminary to further federal relief. Instead, it intended state proceedings to be a plaintiff's primary route with final review of any federal claims in the Supreme Court. [Citations omitted.] Where the state proceedings do not form an integral part of the federal remedy, but were intended to be a separate route, it would be inappropriate for the federal court to award attorney's fees for work done in state proceedings.

*Supra*, at 1037.

Before the advent of the "cognate doctrine" of *Collins*, state procedures were the type of "separate route" described in *Redd*. Since *Collins*, however, these procedures have become the only path to federal court for plaintiffs in Patrick's position. If the state remedies are the judge-made prerequisite for obtaining a federal court hearing, they are as much a part of the federal remedy for due process violations as the judge-made doctrine requiring *Pullman* abstention in *Webb*, or the statutory scheme of Title VII in *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1979).

Defendants have argued in their submission to the court on this point that *Collins* does not create an exhaustion requirement, but merely establishes a new pleading requirement. The fact that Collins lost because of a failure to plead the lack of proper state redress for a biased initial hearing does not mean that, had he survived the defendant's summary judgment motion, the plaintiff would not have had to prove that the requirements of the "cognate doctrine" had been met. The *Collins* decision makes this requirement of actual proof manifest. Remarking on the plaintiff's failure to allege inadequate administrative relief, the court stated: "Nor did Collins allege that Louisiana procedures for redress of the improper administrative proceeding in his case were constitutionally

---

**3.** *See Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1940).

inadequate." The footnote to the quoted passage characterizes this allegation as "contentions regarding factual or mixed questions of law and fact that were not presented to the trial court." *Collins, supra,* note 6 at 254. It is clear, therefore, that a plaintiff wishing to avoid the fate of the plaintiff in *Collins* must present these contentions to the trial court, and do as Patrick did in the case at bar, *i.e.,* show that administrative procedures were actually inadequate. Patrick did so in accordance with the law of this Circuit, and is therefore entitled to his attorney's fees for these state administrative remedies.

The court now turns to defendants' contention that some of the hours claimed by plaintiff's attorneys Clark, Negem and Cooper are inflated. An oral evidentiary hearing in this matter was held on November 16, 1984, pursuant to Eastern District of Texas Local Court Rule 6(g). After consideration of the evidence and argument there advanced, it is found that all of the hours claimed by these attorneys were, in fact, reasonably expended in the prosecution of this action.

■ Finally, defendant has asserted that Negem's services were wholly redundant, in that trial of this matter only reasonably required the services of one attorney. The court takes judicial notice of the fact that defendant found it necessary to employ two lawyers in defense of this action. What is sauce for the goose is sauce for the gander. Defendants' objection is overruled.

It remains to consider what constitutes "the prevailing hourly rate in the community for similar work", *Graves v. Barnes,* 700 F.2d 220, 222 (5th Cir.1983), and whether the product of this amount times the hours worked should be enhanced by a multiplier in order to be reasonably compensatory.

■ Plaintiff has submitted the affidavits of Thomas Hathaway, Equire, and Larry Daves, Esquire, both attorneys practicing in the Tyler Division of the Eastern District of Texas. Both state that the members of the Bar for the Eastern District of Texas routinely charge between $100 and $150 per hour for work on comparable cases. The court finds that $125 per hour will adequately compensate Clark for his work, and that this is the customary rate in this community. As for the associate attorneys, $90.00 per hour, as requested by Negem and Cooper, is a reasonable rate for attorneys with their respective experience.

■ The product of number of hours times rate is the "lodestar" figure for attorney's fees. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974); *Cooper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1092–1093 (5th Cir.1982); *(Cooper Liquor III).* In *Blum v. Stenson,* — U.S. —, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court simplified the procedure for following this lodestar. Before *Blum,* a court was required to direct light from the lodestar through the twelve filters enumerated in *Johnson,* in order to determine whether an overall adjustment of the product of hours-times-rate was necessary to make fees reasonably compensatory. In *Blum,* the court held that the prevailing hourly rate in the community already subsumes most of the factors listed in *Johnson, id.* The only *Johnson* factor to survive *Blum* is contingency, that is, the degree of risk that the action will be unsuccessful, and also that payment will be delayed. In this action, the fee was partially contingent, but plaintiff has specifically declined to request a multiplier on the basis of the contingent portion of the fee (Brief in Support of Plaintiff's Motion for Attorney's Fees at p. 9). Therefore the lodestar amount will be the final award.

The attorneys in this action have showed the following reasonable hours and rates of billing:

| | |
|---|---|
| CLARK | 205.5 hours × $125.00 = $25,687.50 |
| NEGEM | 73.75 hours × $90.00 = $ 6,637.50 |
| COOPER | 28.20 hours × $90.00 = $ 2,538.00 |

However, because plaintiff was only partially successful, these figures will be reduced by one-half. It is, therefor,

ORDERED that defendants will pay the attorneys for plaintiff the following amounts:

| CLARK | $25,697.50 × .5 = $12,843.75 |
| NEGEM | $ 6,637.50 × .5 = $ 3,318.75 |
| COOPER | $ 2,538.00 × .5 = $ 1,269.00 |

Plaintiff also seeks certain fees as part of its bill of costs. Plaintiff is instructed to submit a proposed Bill of Costs, with authorities to support the taxation of each item.