Richard L. SCHULTZ,
Plaintiff–Appellee,

v.

Charles R. HEMBREE; Kincaid, Wilson, Schaeffer & Hembree, P.S.C.; Frank L. Bryant, Defendants,

and

Bateman Eichler, Hill Richards, Inc.; Robert J. McGuiness, Defendants–counter-claimants–Appellants.

Richard L. SCHULTZ; Blas R. Casares, Plaintiffs–Appellees,

v.

BATEMAN EICHLER, HILL RICHARDS, INC.,
Defendant,

and

Frank L. Bryant, Defendant–Appellant.

Blas R. CASARES, Plaintiff–Appellee,

v.

SPENDTHRIFT FARM, INC.,
et al., Defendants,

and

Bateman Eichler, Hill Richards, Inc.; Robert J. McGuiness, Defendants–Appellants.

Blas R. CASARES; Richard L. Schultz, Plaintiffs–Appellees,

v.

SPENDTHRIFT FARM, INC.,
et al., Defendants,

and

Frank L. Bryant, Defendant–Appellant.

Blas R. CASARES, Plaintiff–Appellee,

v.

SPENDTHRIFT FARM, INC.,
et al., Defendants,

and

---

Charles R. Hembree; Kincaid, Wilson, Schaeffer & Hembree, P.S.C., Defendants-Appellants.

Richard L. SCHULTZ, Plaintiff-Appellee,

v.

BATEMAN EICHLER, HILL RICHARDS, INC., et al., Defendants,

and

Charles R. Hembree; Kincaid, Wilson, Schaeffer & Hembree, P.S.C., Defendants-Appellants.

Richard L. SCHULTZ, Plaintiff-Counter-defendant/Appellee,

v.

BATEMAN EICHLER, HILL RICHARDS, INC., Defendants,

and

Frank L. Bryant, Defendant/Counter-claimant/Appellant.

Blas R. CASARES, Plaintiff/Counter-defendant/Appellee,

v.

SPENDTHRIFT FARM, INC., et al., Defendants,

and

Frank L. Bryant, Defendant/Counter-claimant/Appellant.

Richard L. SCHULTZ, Plaintiff-Appellant,

v.

Brownell COMBS, II, Defendant,

and

Bateman Eichler, Hill Richards, Inc.; Robert J. McGuinness, Defendants-Appellees.

Richard L. SCHULTZ, Plaintiff-Appellant,

v.

Brownell COMBS II, Defendant,

and

Charles R. Hembree; Kincaid, Wilson, Schaeffer & Hembree, P.S.C., Defendants-Appellees.

Richard L. SCHULTZ, Plaintiff-Appellant,

v.

Frank L. BRYANT, Defendant-Appellee.*

Nos. 90–15605, 90–15–606, 90–15883 to 90–15887, 90–15889, 90–15890, 90–15922 and 90–15923.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 1991.

Decided June 19, 1992.

See also 723 F.Supp. 458.

* Editors Note: This opinion was originally published at 968 F.2d 830. It is published here together with Judge Carroll's dissenting opinion.

**574**

John I. Alioto and Michael J. Bettinger, Alioto & Alioto, San Francisco, Cal., for plaintiff/counter-defendant/appellee/appellant Richard L. Schultz.

Richard M. Trautwein and Susan L. Williams, Alagia, Day, Marshall, Mintmire & Chauvin, Louisville, Ky., for plaintiff/counter-defendant/appellee Blas R. Casares.

M. Laurence Popofsky, Michael L. Rugen, Richard DeNatale, and Daniel J. Kroll, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendants/appellants/appellees Charles R. Hembree and Kincaid, Wilson, Schaeffer & Hembree, P.S.C.

James E. Burns, Jr., Kevin P. Muck and Suzanne D. Kay, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendants/counter-claimants/appellants/appellees Bateman Eichler, Hill Richards, Inc. and Robert J. McGuinness.

Thomas K. Bourke, Riordan & McKinzie, Los Angeles, Cal., for defendant/counterclaimant/appellant/appellee Frank L. Bryant.

Before: CANBY and KOZINSKI, Circuit Judges, and CARROLL,[**] District Judge.

KOZINSKI, Circuit Judge.

We consider an issue near and dear to almost every lawyer's heart—legal fees.

## I

Casares and Schultz were investors in a private placement of stock in a thoroughbred horse breeding farm. When the market in thoroughbreds declined, their stock was almost worthless; they sued a stable full of defendants but lost on every claim.[1]

The Casares and Schultz actions were harnessed with five others; the plaintiffs collectively asserted almost twenty claims, most of which were based on the same allegedly fraudulent acts and omissions. Most of the claims were disposed of on summary judgment, the district court directed a verdict on a couple others and the jury found for the defendants on the rest. Casares had included in his complaint a claim under the Florida blue sky laws, which he lost on summary judgment because the statute of limitations had run; Schultz had alleged a violation of the Ohio RICO statute, which he voluntarily dismissed. Three sets of defendants—Frank Bryant; investment banker Bateman Eichler, Hill Richards and its employee Robert McGuinness; and Charles Hembree and his law firm Kincaid, Wilson Schaeffer & Hembree—sued for attorneys' fees under the state statutes.[2]

---

[**] The Honorable Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation.

1. For a more complete account of the underlying action, see *McGonigle v. Combs,* 968 F.2d 610.

2. Whether the defendants were entitled to fees is a question of statutory interpretation we re-

Had they prevailed, Casares and Schultz undoubtedly would have sought attorneys' fees for almost all the time spent on the case. Cf. *Arceneaux v. Merrill Lynch, Pierce, Fenner & Smith,* 595 F.Supp. 171, 176 (MD Fla.1984) (awarding all but 31.2 hours of 556.5 hours spent on state and federal securities claims), affirmed, 767 F.2d 1498 (11th Cir.1985). They, as plaintiffs, chose what causes of action to include in their complaints. The defendants, by contrast, were forced to defend against the claims with which they were confronted. In the absence of a contrary legislative determination, rules that benefit one class of litigants must apply to all.

■ Under the Florida blue sky statute, "the court *shall* award reasonable attorneys' fees to the prevailing party *unless* the court finds that the award of such fees would be unjust." Fla.Stat.Ann. § 517.-211(6) (emphasis added). The defendants were the prevailing parties. The Florida statute has been interpreted by the Florida courts to allow defendants to recover attorneys' fees to the same extent as plaintiffs. *Pirretti v. Dean Witter Reynolds, Inc.,* 578 So.2d 474, 475 (Fla.App.1991); *Newsom v. Dean Witter Reynolds, Inc.,* 558 So.2d 1076, 1077 (Fla.App.1990) ("Because [defendant] successfully escaped liability on all counts, ... it was the prevailing party in the suit."). The district court properly construed the statutory language as requiring an award of fees in this case. See *Golub v. J.W. Gant & Associates,* 863 F.2d 1516, 1521 (11th Cir.1989) ("The award of attorneys' fees is *compelled* by [section 517.-

211(6) ] unless the result would be unjust.") (emphasis added).[3]

Under the Ohio RICO statute, "the trial court *may* grant a defendant who prevails ... all or part of his reasonable attorney fees, *unless* the court finds that special circumstances ... make an award unjust." Ohio Rev.Code § 2923.34(H) (emphasis added). The district court correctly held that the statute creates a presumption in favor of awarding fees. Cf. *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (interpreting similar language in 42 U.S.C. § 1988 to create such a presumption).[4] The fee award was within the district court's statutory discretion; Schultz makes no claim that such an award would be "unjust." The court therefore had statutory authority to award attorneys' fees to the defendants.

The district court found that the defendants had submitted sufficient documentation to establish the amount of time expended and the work done, as required by *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210–11 (1986), amended, 808 F.2d 1373 (9th Cir.1987). Furthermore, the district court considered the factors we articulated in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), and concluded that the amounts claimed by the defendants were reasonable.[5] The plaintiffs do not challenge this portion of the district court's ruling.

The problem is corralling the fees. The district court found that "the causes of action involved a common core of facts,"

---

view de novo. *Cunningham v. County of Los Angeles,* 879 F.2d 481, 487 (9th Cir.1988), cert. denied, 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990). We review the amount of the fee award for abuse of discretion. *Id.* at 483.

**3.** Casares made no showing that an award of fees would be "unjust," nor could he. Cf. *Newsom,* 558 So.2d at 1077–78 (finding award unjust where elderly, inexperienced plaintiff was taken advantage of by broker with "vastly superior knowledge and control of the situation," but noting that "[w]e do not hold by this decision that in any case where a stockbroker successfully defends a Chapter 517 claim, an attorney fee should be denied").

**4.** *Hensley's* differential treatment of plaintiffs and defendants, based on the legislative history of section 1988, does not apply to claims under the Ohio RICO statute, which explicitly authorizes awards to defendants.

**5.** The *Kerr* factors are based on the Code of Professional Responsibility, Disciplinary Rule 2–106. The Florida and Ohio courts follow similar guidelines in setting attorneys' fee awards. *Standard Guaranty Ins. Co. v. Quanstrom,* 555 So.2d 828, 834 (Fla.1990); *Swanson v. Swanson,* 48 Ohio App.2d 85, 355 N.E.2d 894, 898 (1976).

that "[a]ll were based on related, and in some cases identical, legal theories" and that "[m]uch of defense counsel's time had to be devoted to resisting the claims as a whole." Order Regarding Attorneys' Fees at 6 (March 28, 1990). The defendants did not request an award of all the fees incurred defending the action, but only for work related to the state-law claims with fee-shifting provisions. Specifically, Bateman Eichler asked for 70% of its total expenditures, Frank Bryant for 90% and the Kincaid firm for 10%.

The court, however, was concerned that Casares and Schultz were only two of many plaintiffs, and that only two of many claims provided for fee shifting. After noting these problems, it stated that "[b]alancing all of the factors, including the number of plaintiffs, the number of causes of action, and the history of this group of cases," the defendants were entitled to five percent of their total expenditures during the period before the state-law claims dropped out of the race. *Id.* at 8–9. The court did not state how it arrived at that figure, nor what it was about the number of claims and plaintiffs that led it to reject the defendants' fee requests.

## II

We live in a society which, unfortunately, sanctions the view that litigation is a proper response to many of life's hard knocks. Lawyers capitalizing on this phenomenon often multiply unnecessarily the number of legal theories under which suit is brought. The result in many cases is shotgun litigation: A barrage of claims, emanating from a point source and fanning out in the hopes of wounding someone in the process. Whatever the outcome, under the American rule each party ordinarily bears its own attorneys' fees, although some state and federal statutes provide for fee shifting. We refer to the former as ordinary claims and the latter as shifting claims.

As lawsuits become ever more complex, and joinder, consolidation and other case management techniques are pressed into service with increasing regularity in an effort to cope with the litigation explosion, we will frequently face the problem confronting us here: Cases in which the prevailing party is entitled to recover its attorneys' fees for some, but not all, claims. In such cases, attorneys may bill their clients for three different types of work: Work devoted solely to shifting claims, work devoted solely to ordinary claims and work that advances both ordinary and shifting claims. Awarding fees for the first two categories is easy: Work devoted only to shifting claims is recoverable; work that isn't isn't. The hard issue is to what extent compensation is available for the third category—work that relates to multiple claims, only some of which allow for recovery of fees. There are various allocation rules courts might apply when confronted with a multiple-claim lawsuit where a party is entitled to recover attorneys' fees under only some of the claims.

One option is to focus on the marginal fees precipitated by the inclusion of shifting claims: The court asks what fees would have been incurred had the shifting claims not been brought, and awards only those fees exceeding that amount. Under this method, the prevailing party only recovers fees for work devoted solely to shifting claims, not fees attributable in any way to ordinary claims. The converse approach focuses on the total fees related to the shifting claims. Under this method the court determines what fees are wholly unrelated to the shifting claims, and awards all the rest. The prevailing party recovers its fees for all work somehow related to the shifting claims, but nothing for work that does not relate to those claims at all.

Both approaches are conceptually flawed.[6] The marginal fees approach undercompensates the prevailing party, because some of the work done on ordinary claims will always benefit the litigation of the shifting claims. Conversely, the total fees approach overcompensates: Some of

---

**6.** A legislature could nevertheless adopt one or the other. Here we distill a default rule, in the absence of legislative expression.

the work benefiting both shifting and ordinary claims might have been omitted had only the shifting claims been brought.

■ We therefore adopt an intermediate rule, one more closely tailored to the policies underlying fee-shifting statutes. We hold that the prevailing party may recover that amount in fees it would have incurred had the shifting claims been litigated by themselves.[7] This amount may well differ from the amount actually expended in advancing (or defending against) the claim in the context of the multiple-claim litigation. It might be less, if the parties would have litigated the shifting claims less vigorously, or compromised them early in the litigation. Or it might be more, as the parties may have devoted more resources to the shifting claims had they not been distracted by others. In any event, this method avoids both overcompensating and undercompensating the prevailing party, because the fees award is pegged precisely to the claim under which it is authorized.

### Conclusion

■ On remand, the district court must determine what percentage of the defendants' attorneys' fees would have been incurred if they were defending only against Casares' Florida blue sky claim and Schultz' Ohio RICO claim. This figure may include expenditures incurred before the Casares or Schultz claims were part of the action if the work was related to those claims, but none incurred after the claims were dismissed.[8] The district court shall provide a clear and concise explanation of its decision, which will inform the parties— and this court, if necessary—of the basis for and reasonableness of the fee award. See *D'Emanuele v. Montgomery Ward &*

*Co., Inc.,* 904 F.2d 1379, 1384–86 (9th Cir. 1990).

VACATED and REMANDED.

CARROLL, District Judge, dissenting in part.

I respectfully dissent from the majority opinion insofar as it "adopt[s]" or "distill[s] a default rule" for the assessment of attorneys' fees in a diversity case involving claims arising under the laws of the states of Florida and Ohio.

This case presents a fundamental *Erie R. Co. v. Tompkins* [1] situation, although the *Erie* opinion is not cited by the majority. This Court is not free to choose which of the various theories to adopt for purposes of fee-shifting in a diversity case. Rather, *Erie* and its progeny direct this Court to ascertain what would occur in this circumstance under the law (statutes or court decisions) of Florida and Ohio, respectively.

In this case, the majority states (fn. 7): As a federal court deciding questions of state law, we attempt to discern the approach the highest court of the state would take. The Ohio courts are silent on this question, and in the absence of contrary evidence we presume they would adopt the rule we discuss in text. The Florida decisions are consistent with the rule we adopt. *See Caplan v. 1616 East Sunrise Motors, Inc.,* 522 So.2d 920, 922 (Fla.App.1988) (awarding fees for time that 'would have been spent defending *any one or all* of the counts') (emphasis added); *Pirretti,* 578 So.2d at 476 ('the effort required to defend the case was *the same* as to both the common law and statutory claims') (emphasis added). In both cases the defendant

---

7. As a federal court deciding questions of state law, we attempt to discern the approach the highest court of the state would take. The Ohio courts are silent on this question, and in the absence of contrary evidence we presume they would adopt the rule we discuss in text. The Florida decisions are consistent with the rule we adopt. See *Caplan v. 1616 East Sunrise Motors, Inc.,* 522 So.2d 920, 922 (Fla.App.1988) (awarding fees for time that "would have been spent defending *any one or all* of the counts") (emphasis added); *Pirretti,* 578 So.2d at 476 ("the effort required to defend the case was *the same* as to

both the common law and statutory claims") (emphasis added). In both cases the defendant would have incurred the same fees had only the shifting claims been brought; thus an award of all the fees was appropriate.

8. The district court should also consider the time spent preparing the fee application, bringing the appeal and on remand.

1. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1933).

would have incurred the same fees had only the shifting claims been brought; thus an award of all the fees was appropriate:

> I disagree with the proposition that "the Florida decisions are consistent with the rule" adopted by the majority.

The Supreme Court of Florida has addressed the problem of determining an appropriate fee when only some of the claims succeed. In such a case, "the trial judge must evaluate the relationship between the successful claims and determine whether the investigation and prosecution of the successful claims can be separated from the unsuccessful claims." *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145, 1151 (Fla.1985), *modified on other grounds*, 555 So.2d 474 (Fla.1990).

More on point is *Caplan v. 1616 East Sunrise Motors, Inc.*, 522 So.2d 920 (Fla. App. 3 Dist.1988).[2] In *Caplan*, a successful defendant sought fees of approximately $22,000, but was awarded only $13,678.50 by the trial court. The Court of Appeals held:

> Caplan contends that the amount of fees awarded was properly reduced because the services by Sunrise's attorneys were not confined to the defense of the count brought under the Florida Unfair and Deceptive Trade Practices Act—for which fees are authorized—but included other counts for which fees are not authorized. We reject this contention in favor of a holding that where, as here, all the claims made against a defendant involve 'a common core of facts and [are] based on related legal theories,' the award of attorney's fees should not be reduced in the absence of a showing that the defendant's attorneys spent a separate and distinct amount of time in defending a count upon which no attorney's fees were awardable. [Citation] Thus, in the present case, time spent marshaling the facts of the sale, the condition of

the car, repairs, damages, etc., likely would have been spent defending any one or all of the counts. In contrast, time spent by Sunrise's attorneys, for example, researching the discrete issue of the liability of a dealer under the Lemon Law should not be included in the award of attorney's fees.

Id. at 921–22 (footnote omitted).

The *Caplan* opinion persuasively demonstrates that Florida has already selected what this majority concludes is a "conceptually flawed" rule that "overcompensates." Clearly, the Florida court would determine what fees are wholly unrelated to the shifting claims and award all the rest.

I further disagree with the majority's conclusion (fn. 7) that "Ohio courts are silent on this question".[3] In *Wing Leasing, Inc. v. M & B Aviation*, 44 Ohio App.3d 178, 542 N.E.2d 671 (1988), the court discussed an award of attorneys' fees in a case where there were successful and unsuccessful claims:

> While a number of factors should be taken into account in determining the amount of reasonable fees, one of the main factors is the result achieved at trial. The relation of the fee allowed to the amount recovered has an important bearing on the reasonableness of the fee. 20 American Jurisprudence 2d (1965) 63–64, Costs, Section 78. Apart from the amount recovered, the number of claims successfully litigated in relation to the total number of claims asserted, and the relation between the successful and unsuccessful claims, should also have an important bearing on the reasonableness of the fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

The trial court abused its discretion in weighing the foregoing considerations. The plaintiff's success in this case was,

---

**2.** In *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir.1986), *modified on other grounds*, 810 F.2d 1517 (9th Cir.1987), the Ninth Circuit held that "[d]ecisions by state intermediate appellate courts are data which are 'not to be disregarded by a federal court unless it is

convinced by other persuasive data that the highest court of the state would decide otherwise.'" (citations omitted).

**3.** For other Ohio attorneys' fees cases, see West's, Ohio Digest, Costs, Key Number 194.14.

at best, severely limited. The amount recovered, $3,850, was paltry. The term 'reasonable' can in no way be read to include the expense of $46,000 in attorney fees for recovery of such a minute sum. Further, a number of plaintiff's claims did not even reach the jury, since the court directed the verdict thereon. It is unreasonable for a plaintiff to recover fees which were expended in pursuit of a substantial number of claims which were defeated by the defendant. *See Hensley, supra,* at 434–436, 103 S.Ct. at 1939–41. When plaintiff's successful and unsuccessful claims share a common factual and legal setting, as in this case, it may be difficult for a court to determine precisely what amount of fees should not be allowed because of the unsuccessful claims. Nonetheless, some effort must be made to limit plaintiff's recovery of fees so that a defendant is not forced to totally finance plaintiff's efforts which are only partially successful. A plaintiff need not succeed on every claim or theory to recover a full fee; nor need a plaintiff necessarily be denied a full fee when it exceeds the amount recovered. This case, however, presents circumstances wherein a number of claims were disallowed and the attorney fee award vastly exceeded the amount recovered. The attorney fee award was unreasonable in amount and therefore in error …

*Id.* 542 N.E.2d at 678. It is evident that Ohio, like Florida, has chosen to follow an allocation rule, well established in countless jurisdictions, but rejected here by the majority opinion as being "conceptually flawed".[4]

Assuming that there is any arguable consistency between the Ohio and Florida opinions and some part of the majority's "default rule," there is no reasonable basis to "presume" that those jurisdictions "would adopt the rule" distilled by the majority. Pursuant to the Majority's "default rule," "the prevailing party may recover that amount in fees it would have incurred had the shifting claims been litigated by themselves." The majority's conclusion is not support by citation to any case which has adopted, or even considered, such a rule.

The suggestions that "this method" [the default rule] avoids both overcompensating and undercompensating the prevailing party because the fees award is *pegged precisely* to the claim under which it is authorized is, I respectfully suggest, appellate hyperbole. (emphasis added). The rule will require a host of discretionary, subjective, and obtuse judgments by a trial judge in reaching an allowed award. A "reasonable" attorneys' fees award by a trial court is, by its very definition, an inherently imprecise determination. At best, it is within a guideline range of a high and low figure. It is an exercise of reasoned judgment, to be reviewed—not *de novo*—but for an abuse of discretion.[5]

Justice O'Connor's remarks in *Rufo v. Inmates of Suffolk County Jail,* —— U.S. ——, ——, 112 S.Ct. 748, 765, 116 L.Ed.2d 867 (1992) (concurring opinion), which in-

---

**4.** I respectfully submit that the Ohio and Florida opinions are consistent with the most recent holding of this Circuit in an analogous situation:

In cases in which a plaintiff's success is limited, we have instructed the district court to apply a two-part analysis: First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims…. If the unsuccessful and successful claims are related, then … the court evaluates the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended. If the plaintiff obtained 'excellent results', full compensation may be appropriate, but if only 'partial or limited success' was obtained, full compensation may be excessive.

*Corder v. Gates,* 947 F.2d 374, 379 (9th Cir. 1991) (quoting *Cabrales v. County of Los Ange-*

*les,* 864 F.2d 1454, 1466 (9th Cir.1988). *See also Hensley,* 461 U.S. at 435–36, 103 S.Ct. at 1940–41.

**5.** The majority reaches the unreasonable conclusion that a district court can reach a fee award—not too high and not too low—but "pegged precisely to the claim under which it is authorized," while providing a "clear and concise explanation" of its evaluation of factors, including whether the parties "would have litigated the shifting claims less vigorously or compromised them early in the litigation" in the absence of or denying claims, or whether "the parties may have devoted more resources to the shifting claims had they not been distracted by others."

volved the modification of a consent decree, are equally applicable to the discretion exercised by a district judge in fixing a "reasonable" fee award:

Determining what is 'equitable' is necessarily a task that entails substantial discretion, particularly in a case like this one, where the District Court must make complex decisions requiring the sensitive balancing of a host of factors. As a result, an appellate court should examine primarily the *method* in which the District Court exercises its discretion, not the substantive outcome the District Court reaches. If the District Court takes into account the relevant considerations (all of which are not likely to suggest the same result), and accommodates them in a reasonable way, then the District Court's judgment will not be an abuse of its discretion, regardless of whether an appellate court would have reached the same outcome in the first instance....

Accordingly, I would affirm the attorneys' fee awards by the district court.