**ROCK CREEK LIMITED PARTNER-SHIP, a California limited partnership, Plaintiff–Appellant,**

v.

**STATE WATER RESOURCES CONTROL BOARD, et al., Defendants–Appellees.**

No. 91–15538.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 12, 1992.

Decided Aug. 5, 1992.

---

Louis L. Touton, Jones, Day, Reavis & Pogue, Los Angeles, Cal., for plaintiff-appellant.

Clifford Lee, Deputy Atty. Gen., San Francisco, Cal., for defendants-appellees.

Before: FLETCHER, POOLE, and NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

The California Water Resources Control Board (Board) imposed minimum flow conditions on a hydroelectric project inconsistent with those contained in the project license issued by the Federal Energy Regulatory Commission (FERC). The position of the Board was rejected by this court in affirming a FERC declaratory order in *State of California, ex rel. State Water Resources Board v. FERC*, 877 F.2d 743 (9th Cir.1989), and by the United States Supreme Court in *California v. FERC*, 495 U.S. 490, 110 S.Ct. 2024, 109 L.Ed.2d 474 (1990). The project sponsor here appeals the district court's denial of an award of attorneys fees in its 42 U.S.C. § 1983 action filed shortly after the Board issued its order. We vacate the order and remand.

## FACTS AND PROCEEDINGS BELOW

Rock Creek Limited Partnership (Rock Creek) is the project sponsor of a small hydroelectric project on Rock Creek, which is a tributary of the South Fork of the American River near Placerville, California. In April, 1983, Rock Creek received a FERC license, which established minimum flows past the project diversion of eleven cubic feet per second (cfs) May to September, and fifteen cfs October through April. The license permitted FERC to change the minimum flow following completion of long-term studies the licensee was to complete in conjunction with the California Department of Fish and Game.

In February, 1984, the Board issued a permit for the project with interim flows duplicating those of FERC. The permit reserved Board jurisdiction to set permanent flow rates after completion of the long-term studies. In 1986, the Board held

hearings concerning the possible imposition of higher minimum flows, and rejected Rock Creek's objections based on its FERC license.

After the Board's rejection of Rock Creek's argument, Rock Creek filed a petition for declaratory order with FERC, seeking an order declaring that FERC's authority to set flow conditions at the project preempted the authority of the Board. In March, 1987, FERC issued an order as requested by Rock Creek, holding that the Board "has no authority to set minimum flows for the project that conflict with those in the license...." 38 FERC ¶ 61,-244 (1987).

A few days after Rock Creek's receipt of the FERC order, the Board issued its Order No. WR 87-2, which set permanent flows of sixty cfs from March through June and thirty cfs July through February. The State of California then intervened in the FERC proceedings on behalf of the Board, challenging FERC's declaratory order. The result was a final FERC order rejecting California's position, which was affirmed on appeal to this court in *State of California ex rel. Water Resources Board v. FERC*, 877 F.2d at 750. The Supreme Court of the United States granted certiorari and affirmed in *California v. FERC*, 495 U.S. at 496, 110 S.Ct. at 2028.

In April, 1987, shortly after the Board issued Order No. 87-2, and contemporaneously with California's intervention at FERC, Rock Creek filed this action in the federal district court under 42 U.S.C. § 1983. Rock Creek sought to enjoin the Board from enforcing Order No. 87-2 and from regulating or asserting jurisdiction to regulate project operations or from interfering with the project's use of water rights for the project. The complaint included a request for attorneys fees pursuant to 42 U.S.C. § 1988. At the same time it filed the complaint, Rock Creek asked for a temporary restraining order and preliminary injunction against enforcement of Order No. 87-2.

The parties stipulated, and the district court ordered, that upon withdrawal of Rock Creek's motion for a temporary restraining order, the Board would refrain from enforcing Order No. 87-2, pending a hearing on the motion for preliminary injunction. Following hearing on that motion in May, 1987, the district court ruled that low flow conditions due to drought, which precluded project operation no matter what the minimum flow requirement was, rendered a preliminary injunction unnecessary. The court urged the parties to schedule a summary judgment hearing on the merits for September, 1987, in view of the potential for sufficient rain to permit operation of the project. Cross-motions for summary judgment were briefed and argued on September 18, 1987. As part of the summary judgment proceedings, the parties stipulated that Order No. 87-2 was in effect and subject to enforcement.

The district court did not rule on the motions for summary judgment, but at a status conference in April, 1988, asked whether the Board would consider waiving enforcement actions against Rock Creek for failure to comply with the state mandated flows. Counsel for the Board stated in a letter to the district court:

1. For the duration of the appeal in the *State of California v. Federal Energy Regulatory Commission*, 9th Circuit Docket No. 87-7538 action, the State Board agrees not to exercise its enforcement powers ... against the [project] for any violation of the bypass flow set forth in the State Board's water right Order No. 87-2 for the protection of the fishery resources of Rock Creek.

2. The State Board agrees to the waiver of enforcement authority as described in paragraph 1 solely for the purpose of obtaining a stay of the trial court proceedings in this action and, thus, encouraging prompt resolution of the ... 9th Circuit action.

On April 22, 1988, the district court entered an order which noted that the appellate proceeding in the Ninth Circuit involved the same preemption issue raised by the action then pending in the district court, vacated the submission of the cross-motions for summary judgment and all

stayed proceedings pending resolution of the appeal.

Following the 1989 decision of this court, the parties stipulated to continuation of the stay pending a decision on California's Petition for Certiorari in the United States Supreme Court. Following the Supreme Court decision, the Board issued Order No. WR 90–10 which amended the project's water appropriation permits to conform with the bypass levels finally adopted by FERC.

In September, 1990, the district court granted the Board's motion to dismiss the case, but retained jurisdiction to hear Rock Creek's motion for an award of attorneys fees for its efforts in the FERC proceeding and in the district court. After briefing, the motion was heard in January, 1991, and the district court held that Rock Creek was not a prevailing party within the meaning of 42 U.S.C. § 1988.

> Although [Rock Creek] has received the relief it sought in this case, there is no causal link between this litigation and the relief. [Rock Creek's] goal when commencing this action was the removal of the threat posed to [Rock Creek's] federal rights by the California State Water Resources Control Board's order. This goal was achieved when the Board withdrew its order pursuant to the Supreme Court's ruling in *California v. FERC*, [495] U.S. [490], 110 S.Ct. 2024, 109 L.Ed.2d 474 (1990). This Court finds that the litigation in this Court has no causal relationship to the court's decision in *California v. FERC*, or the invalidation of the Board's order.

Rock Creek perfected a timely appeal to this court, contending that it was, in fact, a prevailing party and entitled to attorneys fees.

## DISCUSSION

 Awards of attorneys fees pursuant to 42 U.S.C. § 1988 are reviewed for abuse of discretion, but any elements of legal analysis and statutory interpretation which figure in the district court's decision, and the legal standards applied by the district court, are subject to *de novo* review. *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir.1991); *Carson–Truckee Water Conservancy Dist. v. Secretary of the Interior*, 748 F.2d 523, 524 (9th Cir.1984), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 497 (1985). A final determination favoring the plaintiff is not a precondition for a fee award under Section 1988. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). However, the party seeking fees must establish that the party's lawsuit acted as a catalyst which prompted defendants to take action. *Am. Constitutional Party v. Munro*, 650 F.2d 184, 187 (9th Cir.1981); *Braafladt v. Bd. of Governors*, 778 F.2d 1442, 1444 (9th Cir.1985). The moving party has the burden of establishing "some sort of clear, *causal relationship* between the litigation brought and the practical outcome realized." *Rutherford v. Pitchess*, 713 F.2d 1416, 1419 (9th Cir.1983) (quoting *Am. Constitutional Party*, 650 F.2d at 188) (emphasis in original).

In *Sablan v. Department of Finance*, 856 F.2d 1317 (9th Cir.1988), we established a two-part test:

> First, we must determine what Sablan sought to accomplish in bringing his lawsuit and then determine whether the lawsuit was causally linked to the relief actually obtained. Second, there must be a legal basis for the Sablan's claim—it must not be "frivolous, unreasonable, or groundless."

856 F.2d at 1325 (internal citations omitted). As to the causation prong of the test, we said it was "nothing more than inquiry into factual causation." *Id.*

The Rock Creek attorneys fees claim has two parts: that relating to the activities before FERC, including the subsequent appeals, and that relating to efforts before the district court in this action. We will address the two parts separately.

### A. The Administrative Proceedings.

As pointed out above, Rock Creek filed its petition for declaratory order with FERC after it became apparent that the Board was not accepting FERC's authority as exclusive. When California intervened

in that case, the FERC proceeding became the forum in which the battle on the merits was fought.

Rock Creek relies on four United States Supreme Court cases and a Ninth Circuit case in support of its contention that attorneys fees may be awarded under Section 1988 for work before an administrative agency or state court outside the Section 1983 action itself. However, each of those cases is distinguishable from this one.

*New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), involved a claim for attorneys fees for appearances in state administrative and judicial forums in an action for employment discrimination under Title VII of the Civil Rights Act of 1964. The Court noted the interrelated and complementary nature of the state and federal enforcement efforts. It then said:

> Initial resort to state and local remedies is mandated, and recourse to the federal forums is appropriate only when the State does not provide prompt or complete relief.

*Id.* at 65, 100 S.Ct. at 2031–32. The FERC proceeding and the Section 1983 action were not interrelated and complementary, in the sense of the Title VII remedies discussed in *New York Gaslight Club.*

*North Carolina Department of Transportation v. Crest St. Council*, 479 U.S. 6, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986), held that attorneys fees could not be awarded in an action brought solely to obtain attorneys fees for enforcement activities in other forums. Rock Creek's action in district court had purposes other than obtaining an award of attorneys fees so *Crest* is of no help to us here.

*Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), involved an award of attorneys fees to a social security claimant under the Equal Access to Justice Act, 28 U.S.C. § 2412, for legal services rendered in administrative proceedings following a remand to the agency from the district court. The court noted that "administrative proceedings may be so intimately connected with judicial proceedings as to be considered part of the 'civil action' for purposes of a fee award." *Id.* at 892, 109 S.Ct. at 2257. The administrative proceedings there were required by the remand from the district court, unlike those here.

Rock Creek cites *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), for its holding that attorneys fees could be awarded for administrative proceedings claimed to be "tangential" but which had been "crucial" to the Clean Air Act litigation and which was "as necessary to the attainment of adequate relief for their client as was all of their earlier work in the courtroom." *Id.* at 558, 106 S.Ct. at 3094. The *Delaware Valley* case involved a complex series of judicial and administrative proceedings, all of which related to an action filed in federal court to compel Pennsylvania to comply with federal law. Even though part of the effort undertaken was in an administrative forum, it was all directly related to the purpose of the suit.

The Ninth Circuit case of *Bartholomew v. Watson*, 665 F.2d 910 (9th Cir.1982), cited by Rock Creek, does not resolve the issue presented, either. After inmates in the Oregon State penal system filed their action under Section 1983, the action was stayed by agreement while the inmates pursued a separate state court action seeking a declaration of state law which could have mooted the federal action. The trip to the Oregon courts resulted in a decision in favor of the state. Because the case was not mooted in state court, it returned to district court where the inmates received some of the relief requested. This court upheld an award of attorneys fees under Section 1988 which included fees for the work in state court. As the court noted, the state court action was filed *after* the federal action was commenced, and at the insistence of the state. The state proceedings, therefore, were an integral part of the overall effort to resolve the inmates' claims, and was pursued solely because of the filing of the federal action. *Id.* at 912.

In *Bartholomew*, the state action was a necessary step before the prevailing party

could succeed. Likewise, in *Delaware Valley*, the administrative work was required before the party could succeed in federal court. Here, however, Rock Creek was not faced with mandatory administrative action before it could prevail.

 When Rock Creek became aware of the Board's intransigent attitude about its authority to override the FERC decision, it had at least two choices. One was to attempt to get a definitive response from FERC, in order to buttress a later trip to court. When California intervened on behalf of the Board, and then appealed, this became the vehicle for final resolution on the merits.

The other choice Rock Creek had was to proceed directly to court, and obtain an interpretation of FERC's authority without the benefit of a FERC opinion directly on the issue. While this would have been an appropriate course for Rock Creek to follow, it cannot be faulted tactically for going to FERC first, as it did.

The two avenues open to Rock Creek were independent. Either could have resulted in a decision on the question of FERC's exclusive authority. An approach to FERC was not a condition precedent to its entry to federal court, as in *New York Gaslight Club*. Nor was the FERC decision rendered as a part of a continuing federal court action, as was the case in *Sullivan v. Hudson*. The distinct nature of the two proceedings distinguishes them from the related and dependent proceedings involved in the cases relied on by Rock Creek.

 The FERC proceedings resemble more closely the administrative efforts seeking relief for a teacher which were held not to carry a right to attorneys fees for a successful Section 1983 plaintiff:

> Because § 1983 stands as an independent avenue of relief and petitioner could go straight to court to assert it, the School Board proceedings in this case simply do not have the same integral function under § 1983 that state administrative proceedings have under Title VII.

*Webb v. Dyer County Bd. of Educ.*, 471 U.S. 234, 241, 105 S.Ct. 1923, 1927, 85 L.Ed.2d 233 (1985) (internal punctuation and citations omitted). *Cf., Smith v. Robinson*, 468 U.S. 992, 1011 n. 14, 104 S.Ct. 3457, 3468 n. 14, 82 L.Ed.2d 746 (1984) ("nothing in § 1983 requires that a plaintiff exhaust his administrative remedies before bringing a § 1983 suit"). The FERC action lacked the "intimate connection" which sustains awards of attorneys fees in administrative or state court proceedings outside the federal action itself. Therefore, Rock Creek's claim for attorneys fees for its efforts before FERC must fail.

B. The Action in Federal Court.

The district court's order denying attorneys fees focused entirely on the lack of causal connection between the FERC decision and the Supreme Court's decision in *California v. FERC.* We agree with that analysis as to the FERC proceedings and subsequent appeals.

 However, we believe the district court failed to take into account the other aspects of the Section 1983 action. Rock Creek sought more than a decision on the merits: it also sought a temporary restraining order and preliminary injunction pending a final decision. This was relief not available to it in the FERC proceeding.

In *Texas Teachers v. Garland School District*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), the Court specifically rejected the "central issue" test for prevailing party status, reiterating the standard set out earlier: plaintiffs may be considered prevailing parties "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Id.* at 789, 109 S.Ct. at 1491 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). The *Texas Teachers* court also noted that:

> A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, ei-

ther *pendente lite* or at the conclusion of the litigation.

489 U.S. at 791, 109 S.Ct. at 1492.

In a declaration filed in support of Rock Creek's application for preliminary injunction, counsel for Rock Creek stated that he had called counsel for the Board and stated that if the Board would agree not to commence enforcement proceedings "in a fashion contrary to whatever declaratory relief this court may grant," Rock Creek would withdraw its request for injunctive relief. "I indicated to Mr. Lee [counsel for the Board] that such an agreement would provide the Partnership with reasonable assurance the relief that it obtains will be effective while avoiding unnecessary injunctive dictates to the State Water Board." He went on to state that in a later conversation with counsel for the Board, he was informed the Board had decided to decline the proposal. The Board did not contradict these statements by Rock Creek's counsel.

The Section 1983 action filed by Rock Creek did not result in a holding that Board had acted in excess of its jurisdiction. That holding came in the administrative proceedings, ultimately affirmed in a decision by the Supreme Court. Therefore, on the merits of Rock Creek's arguments with the Board, this case did not affect or accomplish the result Rock Creek desired. However, Rock Creek also asked for a temporary restraining order and preliminary injunction in its complaint and ultimately pursued both. The FERC proceedings involved a challenge to an order entered by FERC and were not a challenge to the Board's order, which was only collaterally involved. Thus, Rock Creek needed relief in some other forum.

The relief Rock Creek gained in the district court was in effect an informal stay both of the district court proceedings and the Board's threatened enforcement proceedings. The Board had declined Rock Creek's invitation to do by agreement external to the litigation what later became a

condition of the stay, namely, that the Board would not enforce its illegal order.

In this situation, we think the district court focused too narrowly on Rock Creek's failure to obtain relief on the merits in the Section 1983 action. While the district court did not itself enter a stay, it was the pendency of this action in the district court which gave Rock Creek a vehicle by which to obtain a non-enforcement agreement by the Board. The Board did alter its conduct under the pressure of the lawsuit to the extent that Rock Creek did not need to obtain a formal preliminary injunction. It is possible that the Section 1983 action was causally related to the practical outcome realized and the non-enforcement of the illegal order.

Therefore, based on the foregoing analysis, we believe the district court erred in denying attorneys fees to Rock Creek on the basis asserted and the judgment should be vacated and the case remanded for the purpose of reconsideration of Rock Creek's motion for attorneys fees for its efforts in the Section 1983 action only.[1] The attorneys fees decision is committed to the district court's discretion and we express no opinion as to the ultimate outcome. Rock Creek's request for attorneys fees for pursuing this appeal is referred to the district court. If the district court awards fees for Rock Creek's efforts in the district court, it shall fix and award fees to Rock Creek for this appeal.

**VACATED AND REMANDED.** Costs to appellant.

---

1. Since the district court decided the motion for fees on a causation analysis, it did not have occasion to reach the other prong of the *Sablan* test: Whether there was a legal basis for Rock

Creek's case, *i.e.,* "it must not be frivolous, unreasonable, or groundless." *Sablan,* 856 F.2d at 1325. That issue is still open on remand.