Barbara DOTY, and all other persons similarly situated, Plaintiffs–Appellees,

v.

COUNTY OF LASSEN, and Ronald D. Jarrell as Sheriff, and Individually, Defendants–Appellants.

Nos. 91–16755, 93–16163.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 1994.

Decided Oct. 6, 1994.

Lawrence T. Woodlock, Downey, Brand, Seymour & Rohwer, Sacramento, CA, for defendants-appellants.

Richard A. Derevan, Snell & Wilmer, Irvine, CA, for plaintiffs-appellees.

Before: ALARCON and FERNANDEZ, Circuit Judges, and WILSON,* District Judge.

WILSON, District Judge:

On July 25, 1989, certain inmates at the old Lassen County Jail ("Old Jail") brought suit against the County of Lassen ("County") and the Sheriff of the County of Lassen under 42 U.S.C. § 1983 alleging that conditions in the Old Jail violated the First, Fourth and Eighth Amendments of the Constitution of the United States as applied to the states through the Fourteenth Amendment. Among other things, the prisoners alleged overcrowding, inadequate clothing, inadequate medical, dental and mental health care, inadequate privacy for conversations with attorneys, and unequal access to programs for women prisoners. Plaintiffs sought a broad set of injunctive remedies.

When the suit was filed, Lassen County was developing and implementing plans for construction of a new, much larger jail ("New Jail").

On October 17, 1989, the District Court approved a stipulated order preliminarily enjoining certain Old Jail conditions, primarily overcrowding.

On April 25, 1990, defendants made an offer of judgment pursuant to Federal Rules of Civil Procedure Rule 68. Plaintiffs rejected this offer. On July 6, 1990, defendants made a second offer of judgment limited to the medical care issues. Plaintiffs did not accept this offer, nor did they formally reject it.

Beginning on July 16, 1990, the case was tried before Magistrate Judge John Moulds. The trial concluded in September 1990.

On July 1, 1991, the New Jail opened and the County ceased using the Old Jail.

On August 1, 1991, Magistrate Judge Moulds entered his 129-page Findings and Recommendations. On September 17, 1991, District Judge Lawrence Karlton entered an Order adopting (with one minor modification) the Magistrate Judge's Findings and Recommendations. This Order granted only a small fraction of the injunctive relief sought by plaintiffs. On October 9, 1991, Judge Karlton entered a judgment. On November 7, 1991, the defendants filed their notice of appeal from the judgment. This commenced Appeal No. 91–16755.

The attorney's fees litigation then commenced, with both sides seeking attorney's fees. On March 30, 1993, Magistrate Judge Moulds filed a 29-page Findings and Recommendations on the attorney's fees issue. On April 20, 1993, Judge Karlton filed an order adopting in full the Magistrate Judge's Findings and Recommendations. This order granted the plaintiffs some of the attorney's fees they had sought and denied the defendants' request for fees. On April 27, 1993, Judge Karlton entered his Judgment pursuant to the attorney's fees order. On April 28, 1993, the appellants filed their notice of appeal from the attorney's fees order. This commenced Appeal No. 93–16163.

* Honorable Stephen V. Wilson, United States District Judge, Central District of California, sitting by designation.

# I

## Scope of Review

### A. Jurisdiction

The inmates brought their action pursuant to 42 U.S.C. § 1983. The District Court had jurisdiction pursuant to 28 U.S.C. § 1343. We have jurisdiction on appeal from the judgments of the District Court pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, vacate and remand for further proceedings consistent with this opinion.

### B. Standards of Review

The standards of review for our examination of the District Court's decision to grant injunctive relief regarding prison conditions are set forth in *Hoptowit v. Ray*, 682 F.2d 1237, 1245–46 (9th Cir.1982). The District Court's factual findings are reviewed for clear error. *Id.* The District Court's legal conclusions are reviewed *de novo.* *Id.*

■■■ When a constitutional violation has been properly identified, the District Court's fashioning of a remedy is reviewed for abuse of discretion. *Id.* Thus, we may not reverse unless we have a definite and firm conviction that the District Court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. *Maag v. Wessler*, 993 F.2d 718, 719 (9th Cir.1993). Under this standard, we must "scrutinize the injunction closely to make sure that the remedy protects the plaintiffs' constitutional rights and does not require more of state officials than is necessary to assure their compliance with the constitution." *Toussaint v. McCarthy*, 801 F.2d 1080, 1089 (9th Cir.1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). "Within these parameters, we will defer to the district court." *Id.*

■■■ Awards of attorney's fees pursuant to 42 U.S.C. § 1988 are reviewed for abuse of discretion. *Rock Creek Ltd. Partnership v. State Water Resources Control Board*, 972 F.2d 274, 277 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2439, 124 L.Ed.2d 657 (1993). However, any elements of legal analysis and statutory interpretation which figure in the District Court's opinion are subject to

*de novo* review. *Id.* The District Court's factual determinations underlying its finding that plaintiffs are the "prevailing party" for purposes of collecting attorney's fees under Section 1988 will not be set aside absent clear error. *Sablan v. Department of Finance*, 856 F.2d 1317, 1324 (9th Cir.1988).

### C. Judicial Review of Prison Conditions

■■■ In examining prison conditions, federal courts must remember that "[t]he Eighth Amendment is not a basis for broad prison reform." *Hoptowit*, 682 F.2d at 1246. "The function of a court is limited to determining whether a constitutional violation has occurred." *Id.* When a violation is found, the court must fashion "a remedy that does no more and no less than correct that particular constitutional violation." *Id.* Beyond this responsibility, federal courts have no role in the formulation of prison policy. "Any needed prison reform is an executive and legislative responsibility." *Id.*

# II

## Original Conditions and the Preliminary Injunction

In issuing its final injunctive order, the District Court made factual findings regarding the conditions at the Old Jail prior to the litigation. These findings are not appealed, and we therefore accept them as true. In 1970 the County built the Old Jail. The Board of Corrections established a capacity of forty-one inmates for the Old Jail. The actual population exceeded the rated capacity from 1987 until the time the lawsuit was filed. From January to August 1989, the prison housed between fifty-two and eighty-two inmates at any one time, with an average of sixty-three. This overcrowding resulted in numerous problems at the jail, including prisoners sleeping on bedding on the prison floor and prisoners sleeping in unsanitary conditions within inches of toilets and/or showers.

The stipulated order entered on October 17, 1989, provided the prisoners with the following relief pending the outcome of the lawsuit:

(1) The County agreed to limit inmate population at the Old Jail to forty-one inmates;

(2) The County agreed to limit the temporary holding cell's population to the rated capacity;

(3) The County agreed to limit time spent in the temporary holding cell to eight hours;

(4) The County agreed that use of the detoxification facility would comply with California law;

(5) The County agreed that all inmates would be provided with a permanent bed appropriate to his/her classification; and

(6) The County agreed that all inmates would have daily access to the "program room" and outdoor recreation.

## III

### The Final Injunction

The District Judge's 1991 Order granted the following relief:

(1) For a period of one year, the County was prohibited from exceeding the established inmate capacities at the Old Jail or the New Jail;

(2) The County was required to "modify" and follow written policies regarding access to the jail law library;

(3) The County was required to clarify the procedures for staff handling of prisoners demonstrating a mental disorder;

(4) The County was required to develop a procedure for ensuring a timely response to an inmate's request for mental health care.

All further requests for relief were denied. Some of these requests were denied because the disputes had been resolved by the County's implementation of new policies during the litigation. Others were denied on the merits with findings that the plaintiffs had not established several of the alleged constitutional violations.

The County contends that the injunction was improper. We agree.

### A. Population Cap

Pursuant to the terms of the injunction, the court-ordered population caps on the jails expired on September 13, 1992. Accordingly, the dispute over the imposition of the cap is moot, and this Court's opinion has no impact on the now-expired portion of the injunction.

However, this Court must still examine the merits of the population cap because the propriety of that order is central to the resolution of the attorney's fees disputes which we confront below. For organizational clarity, we will address the merits of the population cap order here, rather than in the portion of the opinion addressing the attorney's fees issue.

■ The portion of the injunction requiring a population cap on the Old Jail was improper. When the District Court entered its injunction, it is undisputed that the County had transferred all its inmates to the New Jail and was no longer using the Old Jail. As a result, the question of the need for a population cap at the Old Jail was moot.

■ The portion of the injunction requiring a population cap on the New Jail was also improper. Even assuming *arguendo* that the Old Jail's overcrowding resulted in unconstitutional conditions of confinement,[1] the District Court abused its discretion in judicially imposing a population cap on the New Jail. The Old Jail's rated capacity was forty-one inmates, and its peak population had been eighty-two inmates. The New Jail, by contrast, had a rated capacity of 248 inmates. In fashioning a remedy, the District Court must focus on the specific constitutional violations found. *Hoptowit*, 682 F.2d at 1247. Here, the District Court had identified constitutional violations resulting from the overcrowding of a small jail. Remedying these problems did not require an injunction limiting prison population at the New Jail because the New Jail had capacity substantially in excess of any past Lassen County inmate population. The imposition of a remedy

---

**1.** While overcrowding itself is not a violation of the Eighth Amendment, overcrowding can, under certain circumstances, cause effects, e.g., un-sanitary conditions or high levels of violence, that violate the Eighth Amendment. *Hoptowit*, 682 F.2d at 1249, 1255–56.

broader than the minimum necessary to correct a specific violation requires the violation of past court orders. *LeMaire v. Maass,* 12 F.3d 1444, 1455 (9th Cir.1993); *see Orantes–Hernandez v. Thornburgh,* 919 F.2d 549, 564 (9th Cir.1990) (violations of preliminary injunction justify broad permanent injunction). Because there was no ongoing, overcrowding-related constitutional violation at the New Jail, because there was no reason to believe that past instances of overcrowding would recur in the much larger New Jail, and because there was no evidence of violations of past court orders, the District Court abused its discretion in extending the population cap order to the New Jail.

## B. *Law Library Access*

■ The Constitution requires that prisoners be given adequate access to legal resources in the form of an adequate law library or adequate assistance from persons trained in the law. *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). This constitutionally-mandated minimum access requires more than a "paging system" by which inmates can request books from a law library. *Toussaint,* 801 F.2d at 1109–1110.

■ The District Court order required the County to alter the written policy regarding prisoner access to the law library so that it could not be interpreted to allow a "paging system" as a full alternative to allowing physical access to a law library. However, there is no evidence in the record that the County had ever interpreted or applied the policy to allow the prison to use a "paging system" rather than allowing a prisoner direct access

to the law library. The possibility that the policy could hypothetically have been interpreted in an unconstitutional manner does not establish a constitutional violation. Since this portion of the order did not address a constitutional violation, the required "modification" was improper.

The order further required the prison to adhere to the policy's requirement that inmates be given law library access within a reasonable time of a written request. In adopting the findings of the Magistrate Judge, the District Court did not specifically find any constitutional violation with respect to inmate access to the law library.[2] In the absence of a constitutional violation, this injunctive relief was improper.

## C. *Handling of Prisoners Demonstrating Mental Health Disorders*

■ The order required the prison to clarify apparently conflicting portions of the County's Standard Operating Procedures regarding the referral of prisoner-patients demonstrating mental disorders. One provision of the Standard Operating Procedures directed that certain prisoners be referred first to the mental health department, while a second provision directed that certain, potentially identical, prisoners be referred first to the prison's medical staff and only secondarily to the mental health department.

Having reviewed the evidence on this issue, the District Court did not find that any constitutional violation had occurred as a result of this conflict. The District Court apparently believed that this order was appropriate because the conflicting provisions

---

2. The plaintiffs offered testimony from only one unrepresented inmate who claimed he had been denied access to the law library. Plaintiff Holt testified that during March 1988, he made written requests to be taken to the law library because he was representing himself at a parole revocation hearing. Holt testified that his request was denied and that he was told that there was insufficient staff to accommodate his request. The Magistrate Judge did not make any explicit determination regarding the truth of Holt's testimony. The Magistrate Judge simply concluded that "the concerns raised by [Holt's] testimony related to the period of overcrowding and are, in any event, addressed by this court's recommended disposition."

To the extent that this constituted an implicit finding of a constitutional violation, the District Court abused its discretion in ordering compliance with the prison's written policy. In analyzing the law library issue, the District Court adopted the Magistrate Judge's conclusion that the "root causes" of any library access problems were overcrowding and understaffing and that the resolution of these conditions should "eradicate" the law library problem. Since the larger New Jail solved the overcrowding problem and since understaffing problems had been separately solved, the ordered remedy was not "necessary" to redress the constitutional violation and was therefore improper.

might someday lead to unconstitutional care. However, since either alternative referral would lead to constitutionally permissible care, since the conflict appears unlikely to result in delayed treatment, and since no constitutional violation had occurred, the District Court abused its discretion in ordering the clarification.

### D. Timely Response to Inmate Request for Mental Health Care

■ The final element of the injunction required the prison to adopt procedures to ensure responses within a fixed time to all prisoner requests for mental health treatment. The requirements for constitutionally adequate mental health care have not been directly addressed by this Court. In accordance with the other courts of appeals that have examined this issue, we now hold that the requirements for mental health care are the same as those for physical health care needs. *Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir.1991); *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir.1977); *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir.1990); *Greason v. Kemp*, 891 F.2d 829, 834 (11th Cir.1990); *see Hoptowit*, 682 F.2d at 1253 (analyzing mental health care requirements as part of analysis of general health care requirements).

The District Court's order requires us to consider whether plaintiffs established that the mental health care treatment of any prisoner fell below constitutional standards or that the mental health care system at the prison fell below constitutional standards.

■ To establish unconstitutional treatment of a medical condition, including a mental health condition, a prisoner must show deliberate indifference to a "serious" medical need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The "routine discomfort" that results from incarceration and which is

"part of the penalty that criminal offenders pay for their offenses against society" does not constitute a "serious" medical need.[3] *Id.*

The district judge made this fixed-time-response order based on evidence that Plaintiff Doty had twice requested mental health care and had not received any response to her requests. The only evidence regarding the seriousness of Doty's mental health problems was evidence in her medical file that, at approximately the same time that she requested mental health care, she was treated by a physician's assistant for symptoms including nausea, shakes, headache and depressed appetite. The physician's assistant concluded that she was suffering from unresolved family situational stress and anxiety.

■ The District Court's factual findings with respect to Doty's mental health are not clearly erroneous so we accept as true that Doty was suffering from nausea, shakes, headache and depressed appetite due to unresolved family situational stress. We review *de novo* the legal conclusion that these facts establish a "serious" medical need, and we conclude that they do not. Doty's mild stress-related ailments are the type of "routine discomfort" that may result merely from incarceration and the concomitant separation from one's family. A "serious" medical need requires an ailment of a greater magnitude or with a cause separate from confinement. *See Torraco*, 923 F.2d at 235 & n. 4 (attempted suicide and separate drug overdose); *cf. Jordan v. Gardner*, 986 F.2d 1521 (9th Cir. 1993) (en banc) (body searches by male guards of female inmates who previously had been subject to sexual abuse causes severe emotional distress constituting cruel and unusual punishment). Since Doty was not suffering from a "serious" medical need, no constitutional violation occurred.

■ The Magistrate Judge's analysis also included an examination of the constitutionality of the prison's mental health care *system*. The Magistrate Judge concluded that the prison's mental health care system was con-

---

**3.** In examining medical conditions separate from the "routine discomfort" of incarceration, indicia of a "serious" medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain. *McGuckin*, 974 F.2d at 1059–1060.

stitutional except for the failure to ensure a fixed time response to prisoner's mental health complaints. The Magistrate Judge based this conclusion solely on the failure to respond to Doty's complaints. Accepting the fact of the failure to respond as true, we review *de novo* the legal conclusion that a constitutional violation has been established. We conclude that a constitutional violation was not established. An isolated failure to respond to a non-serious medical need cannot, by itself, establish an unconstitutional health care system.

Since no constitutional violation existed, the fixed-time response order was inappropriate.

In summary, we have concluded that the injunction as a whole was erroneous and that the still existent portions of the injunction must be vacated. We therefore remand with instructions to enter judgment in favor of the defendants.

## IV

### *The Attorney's Fees*

Our decision to vacate the injunction requires that the attorney's fees order also be vacated and remanded. Despite the need to remand, certain aspects of the attorney's fees in dispute are ripe for our review.

### A. *Award of Attorney's Fees Under Section 1988*

■■■ Under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, the District Court may award reasonable attorney's fees to the "prevailing party" in a Section 1983 action. " '[P]laintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley Ecker-*

*hart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir. 1978)). In determining whether the plaintiffs are a prevailing party and in determining the appropriate amount of awardable attorney's fees, plaintiffs are entitled to credit for "catalytic" changes in prison policy resulting from the litigation even if those changes are not part of any order. *Rock Creek Ltd. Partnership,* 972 F.2d at 277.

Plaintiffs sought an award for their work in obtaining a preliminary injunction and because their work acted as a "catalyst" for reforms at the jails.[4] Defendants concede that the plaintiffs were the prevailing party for purposes of obtaining the preliminary injunction, but appeal the District Court's award of fees for work done subsequent to the preliminary injunction. Defendants also appeal the District Court's denial of defendants' motion for attorney's fees.

### B. *Catalytic Relief*

■■■ This Court has adopted the First Circuit's two-part test for determining whether plaintiffs have obtained catalytic relief. *Sablan,* 856 F.2d at 1325 (adopting standard established in *Nadeau,* 581 F.2d at 281). First, the District Court must determine what plaintiffs sought to accomplish in bringing their lawsuit and then determine whether the lawsuit was causally linked to the relief actually obtained. *Id.* Second, the District Court must determine whether there is a legal basis for the plaintiffs' claim—it must not be "frivolous, unreasonable or groundless." *Id.*

Defendants do not appeal the District Court's conclusion, in applying the first part of the *Sablan* test, that the relief described by the Magistrate Judge was causally linked to the lawsuit.[5] Defendants' appeal is limited to their argument that the District Court

---

4. Plaintiffs also sought fees for their work obtaining the permanent injunction. Our reversal of the order granting the permanent injunction requires the denial of this portion of the fee request.

5. Beyond the relief obtained through the preliminary injunction, the District Court found that the plaintiffs had obtained the following catalytic relief:

(1) Increases in exercise opportunities for prisoners, including resurfacing of the outdoor yard;

(2) Improvements in access to clothing, including additional undergarments for female inmates;

(3) Increase in medical sick call from five to seven days a week;

misinterpreted the second element of the *Sablan* test. This legal question is reviewed *de novo*.

 Defendants contend that the second element of the *Sablan* test requires the District Court to determine whether the relief was "required by the Constitution or federal law." Defendants are incorrect. The District Court correctly held that the *Sablan* test requires only that the relief be related to a claim that is not frivolous, unreasonable or groundless. *Rock Creek Ltd. Partnership*, 972 F.2d at 277; *Idaho Conservation League, Inc. v. Russell*, 946 F.2d 717, 720 (9th Cir. 1991); *Andrew v. Bowen*, 837 F.2d 875, 877–78 (9th Cir.1988); *California Association of the Physically Handicapped, Inc. v. FCC*, 721 F.2d 667, 671–72 (9th Cir.1983) (holding that claim did not have a "legal basis"), *cert. denied*, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984). This test sensibly keeps the District Court from having to address, during the attorney's fees litigation, the merits of resolved disputes to determine whether the relief obtained would have been obtainable by judgment. We affirm the District Court's holding regarding the *Sablan* elements.

### C. *Denial of Defendants' Request for Attorney's Fees*

The defendants' opening brief states that they are also appealing the District Court's decision to deny defendants' motion for attorney's fees. However, the defendants did not brief this issue on appeal. The failure to brief the issue waives defendants' right to appeal the District Court's denial of defendants' motion for fees.

The District Court's award of attorney's fees to the plaintiffs is vacated. The plaintiffs' request for attorney's fees is remanded to the District Court for determination of the appropriate fee award consistent with this opinion. In calculating the appropriate fee, the District Court should consider plaintiffs'

(4) Improvements in medical record-keeping practices, including the gathering in a single site of prisoner medical records;

(5) Development and implementation of a formal detoxification policy;

(6) Improvements in the medical screening form for prisoner intake, including questions about suicide attempts or suicidal thoughts;

limited success and the factors set forth in *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir.1992), *Schultz v. Hembree*, 975 F.2d 572 (9th Cir.1992), and *Harris v. Marhoefer*, 24 F.3d 16 (9th Cir.1994).

**AFFIRMED IN PART, REVERSED IN PART, VACATED and REMANDED.**

(7) Medical clearances for food handlers;

(8) Revision of medical protocols to meet the standards of the California Medical Association;

(9) Additional training on jail medical issues for corrections officers; and

(10) Other improvements in prisoner medical care.